### WULBERN & CO. v. TIMMONS AND NISSEN, ADM'RS.

1. ADMINISTRATORS AND EXECUTORS—ACCOUNTING.—When an administrator overpays one creditor of his deceased, which overpayment is ascertained at the suit of another creditor, the amount so overpaid should not go to the suing creditor, but should be prorated among all.

2. TRUST—PAROL TRUST.—In order to establish a parol trust in money deposited in bank, it is only necessary to show that the trust funds were deposited by the trustee, and that that amount was there to his credit by reason of the fact that he had not withdrawn such deposit.

Before BUCHANAN, J., Florence, September, 1898. Reversed.

Action by C. Wulbern & Co. against Mattie E. Timmons and John T. Nissen, administrators of L. R. Timmons. From judgment for plaintiff, defendants appeal.

*Mr. J. P. McNeill,* for appellants, cite: *Trust may be declared by parol:* 23 Am. Rep., 447; 14 S. C., 216. *Identification of trust funds by special marks not necessary, when same can be followed:* 57 Am. R., 290; 96 N. Y., 32; 30 Kans., 156; 52 Am. R., 802; 44 Am. Dec., 400. *Equity will follow it through any number of transmutations:* 35 Minn., 75; 22 Pa. St. R., 16; 14 Wis., 131; 26 Ill., 63; 138 N. Y., 369. *Mingling does not prevent identification:* 74 Me., 590. *Cestui que trust has paramount title to trustee*

*and creditor:* 57 Am. R., 290; Rich. Eq. Cases, 175; 1 Johns. Ch., 128; 7 Johns. Ch., 755.

*Messrs. Wilcox & Wilcox,* contra, cite: *Testimony shows no trust, but a simple loan:* 15 Fed. R., 858. *If trustee has mingled funds with his own, cestui que trust cannot follow funds in hands of executor or assignee of trustee, but is in position of general creditor:* 1 Salk., 160; 4 Mason, 29; 3 Dea., &c., 351; 10 Johns, 63; 2 Dill, 215; 12 N. B. R., 203; 4 N. B. R., 100. *A new defense cannot be raised by exception for the first time:* 32 S. C., 86. *Judge is only required to charge law applicable to the case:* 52 S. C., 438; 50 S. C., 49.

July 5, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendants, administrators of the estate of Luther R. Timmons, deceased, in the administration of the assets of their intestate's estate, paid to Mrs. Sarah Timmons the sum of $269.31, in full payment of her claim against the estate of the intestate, on the ground that her claim was that of a *cestui que trust* of said Luther R. Timmons in his lifetime, and that such trustee had the funds of his said *cestui que trust* on deposit to his individual credit in the Bank of Florence at the time of his death. The remaining assets only paid a little over forty-two cents on the dollar of the claims of all other creditors. The administrators made their settlement with the probate court for Florence County, showing in the manner above indicated that said administrators had fully administered the estate of their intestate. Thereafter, and not long thereafter, the plaintiffs brought an action in the Court of Common Pleas for Florence County against said administrators, wherein they alleged that the intestate, Luther R. Timmons, was indebted to their firm at the time of his death, by open account, in the sum of $285.29, upon which the said defendants as administrators had paid only the sum of $120.35, leaving a balance still due the plaintiff of $164.94. These plaintiffs claimed

that the defendants, as administrators as aforesaid, had no right to pay Mrs. Sarah Timmons $269.31 in full of her debt, because the funds which the intestate left to his credit in the Bank of Florence were there to his credit on a general account. "Under the circumstances, plaintiffs contend that the said funds as thus deposited should have been disbursed among the creditors in common with the other funds of the intestate, disbursing to the said Mrs. Sarah Timmons the amount claimed by her as trust funds in the same ratio as to the other general creditors; and that in the present action the plaintiffs should receive a verdict for the balance of such funds not exceeding the amount sued for in the complaint, after allowing Mrs. Sarah Timmons her pro rata share of said amount thus deposited." The action came on to be tried before Judge Buchanan and a jury. The only evidence of any trust was in the testimony of Willian Hunter, who said that on one occasion, at the request of Luther M. Timmons, he accompanied him in a ride in a buggy to see Mrs. Sarah Timmons. He told me "he was going to Sarah's to give her her money." "After we got there he said, 'here is your money, now what must I do with it?' She said: 'Well, brother Luther, I want you to keep it for me and take care of it for me.'" There was testimony that the money in question was $300, which Mrs. Sarah Timmons got from her husband's estate. There was no testimony that Luther M. Timmons placed the money his sister Sarah entrusted to his keeping in the Bank of Florence. John T. Nissen, one of the administrators and defendants, testified that he found the money in the bank, and he and his coadministrators checked it out of the bank. "Mrs. Sarah Timmons put in her claim that L. R. Timmons held in trust for her the interest that she got from her husband to the amount of $269, and upon that being verified by Dixie Gregg and Mr. Hunter," it was paid. It was also shown that $269.31 was not the only money the intestate had in bank, but that he had that sum and $13.78 besides. The testimony showed that the defendants, as administrators,

paid a little more than forty-two cents on the dollar of the claims rendered by Johnson, Crews & Co., C. Wulbern & Co., Miller Hardware Co., F. W. Wagener & Co., W. P. Pickett & Co., C. F. Sauer Co., Stevenson, Taylor & Co.— which said forty-two cents on the dollar yielded to Johnson, Crews & Co., $155.15; C. Wulbern & Co., $120.35; Miller Hardware Co., $3.33; F. W. Wagener & Co., $28.48; W. P. Pickett & Co., $21.59; C. F. Sauer Co., $10.25; and to Stevenson, Taylor & Co., $9.36.

The Circuit Judge charged the jury as follows: "The plaintiffs contend, Mr. Foreman, that they are entitled to certain moneys by reason of an account that was due by the deceased to the plaintiffs. They (the defendants) in reply say that they have administered fully all moneys and assets that came into their hands; that they have reduced it (the estate) to money and paid it out as the law directs that they must; that we (meaning the administrators) have fully administered our trust that the law devolves upon us by reason of our appointment as administrators. The issue goes back on an item in the inventory there in which the plaintiffs say is an item of money deposited in the Bank of Florence, and drawn out by you (meaning the administrators), and that you did not pro rate it as you ought to have done amongst the creditors jointly; that you say you did get the money, but claim that it was held in trust for Mrs. Timmons, when, as matter of fact, it was there on general deposit, and ought to have been applied, with the rest of the funds, to the satisfaction of the debts of the creditors. The law is this, Mr. Foreman, a general deposit is a deposit to the credit and general use of the depositor, and is administered, where it is deposited to the general credit of a deceased, like all other assets. An account with a bank, as between the bank and the depositor, is a mere matter of debt, and does not impose any trust at all, because banks loan money and receive money from A. and B. backwards and forwards. Unless there is some way of identifying, to impose a trust upon it, the particular amount wrapped together, or the particular

package laid by, when there is a general deposit, the creditors in the course of the administration have a right to look to that as not being embraced in a trust. Where a person loans a sum of money to a person, who afterwards dies, and that person used the money, it becomes a debt; or where he deposited the money along with other money, in general account, that does not make it a trust by reason of that transaction. It makes no difference whom the money is due to. The law cannot consider that, because that money came from a particular person, probably more deserving than another. The law cannot consider the condition of people. We only consider the declaration of the law. Therefore, Mr. Foreman, if a person in his lifetime put a sum of money in the bank, and when he dies there is deposited in the bank to his credit so much money, it may be the same amount in figures, but that cannot be impressed with a trust unless you identify the particular bills. A trust must be something more than a general charge, or the moment the person dies it is subject to his debts. If there was anything to identify the piece of property or the particular bill, by reason of it being wrapped up together, or enclosed in a sack or bag, and the particular bills are paid over, then it is probable that a trust might be fixed on it, but cannot be fixed where the money passes backwards and forwards. It becomes a mere matter of debt. A person who deposits money in a bank and dies, that does not impress a greater trust on it than there was on it before he died. Therefore, Mr. Foreman, I charge that where money is left by a person in his lifetime (which was to be paid back to A. or B., he receives it from A. or B.,) and deposited in the bank to his credit, on his death the money cannot be identified, it becomes merely a debt, and must be established on his death, and be paid like other debts. A trust is not impressed that way. Your duty is to inquire whether the plaintiffs have made out their case here, and, as a necessary incident to that, is whether the deposit was special or general. If you come to the conclusion that there was no trust here and that the administrators

received the money by general deposit, and is part of the assets of the deceased, then you find for the plaintiffs so much. If you come to the conclusion, however, that there was a special deposit, the particular money has been identified, and placed to his credit as such in the bank, and that the same bills were turned over to him and the administrators paid the money to Mrs. Timmons, then your verdict will be for the defendants. If you find for the plaintiffs, you will find the amount the administrators paid to Mrs. Timmons, less the amount she is entitled to under the distribution. In other words, if you find for the plaintiffs, you will find the overplus, after giving Mrs. Timmons the amount she is entitled to in the distribution. If you find for the defendants, you simply say : 'We find for the defendants.' Hand the record to the jury." The jury found for the plaintiffs, $156.20.

After judgment, the defendants now appeal on the following grounds : "1. Because his Honor erred in holding that in order for the beneficiary of a special trust fund, which was deposited in the individual name of the trustee, to recover the same, there must be an identification of the specific money originally left with such trustee. 2. Because his Honor erred in holding that funds held as a special trust for another and deposited in bank to the general account of the trustee, are subject to equal distribution among the creditors of the deceased trustee, unless the funds so deposited be specially identified as being the identical bills or packages of money originally deposited. 3. Because his Honor, in charging the jury as follows : 'A general deposit is a deposit to the credit and general use of the depositor, and is administered, when it is deposited to the general credit of a deceased, like all other assets,' erred in not charging additionally, unless it appears by the preponderance of the testimony that a certain amount had been deposited as a special trust for another, in which case the amount so deposited would not be subject to distribution among the general creditors. 4. Because his Honor erred in charging the jury as follows :

'An account with a bank, as between the bank and the depositor, is a mere matter of debt, and does not impose any trust at all, because banks loan money and receive money backwards and forwards. Unless there is some way of identifying (to impose a trust upon it) the particular amount wrapped together or the particular package laid by;' whereas he should have charged that the following or pursuing of the amount of the funds would be a sufficient identification thereof, if proven by the preponderance of the testimony. 5. Because his Honor, in referring to the certain amount claimed to have been deposited in trust for Mrs. Sarah Timmons, erred in charging the jury as follows: 'If a person, in his lifetime, put a sum of money in the bank, and when he dies there is deposited in the bank to his credit so much money, it may be the same amount in figures, that cannot be impressed with a trust, unless you identify the particular bills;' whereas he should have charged that such a deposit can be impressed with a trust, if the fund so deposited be established or followed as the property of another in trust. 6. Because his Honor erred in charging the jury as follows: 'If you find for the plaintiff, you will find the amount the administrators paid to Mrs. Timmons, less the amount she is entitled to under the distribution. In other words, if you find for the plaintiffs, you will find the overplus after giving Mrs. Timmons the amount she is entitled to in the distribution;' whereas he should have charged, that if they found for the plaintiff, their verdict should have been for such an amount as plaintiffs claim would be when prorated with the other creditors of L. R. Timmons."

It seems clear to us from a consideration of the last, which is the sixth, exception, that there must be new trial here. Heretofore we have taken the pains to set out, from the testimony, the names of the creditors of the estate of intestate, and the amounts each one of such creditors has received from the administrators, being forty-two per cent. of their respective claims. Now if the administrators in this case have paid to: Johnson, Crews & Co., $155.15 on their

claims of about $369; C. Wulbern & Co., $120.35 on their claims for $285.29; Miller Hardware Co., $3.33 on their claims for about $7.90; F. W. Wagener & Co., $28.48 on their claims for about $67.15; W. P. Pickett & Co., $21.59 on their claims for about $51.20; G. F. Sauer & Co., $10.25 on their claims for about $24.30; Stevenson, Taylor & Co., $9.36 on their claims for about $22.28; and have overpaid Mrs. Sarah Timmons, over and above her forty-two per cent. on $269.31, which was $113.60, the sum of $155.71, there still remains, in law, in the hands of the administrators, this sum of $155,71 for distribution among all the creditors of the estate of the intestate.   There is no reason or excuse for paying to one creditor, C. Wulbern & Co., all of this fund of $155.71, for the very ground of re-quiring these administrators to account for and make good this sum of $155.71, was that they had paid it to one cred-itor to the exclusion of the other creditors, who are as much entitled to be paid as was Mrs. Sarah Timmons.   It is also evident that Mrs. Sarah Timmons is herself entitled to pro rata share of the $155.71, which is $38.02.   The administra-tors are entitled to this credit, which, when deducted from $155.71, leaves in their hands to be applied to all other cred-itors, except Mrs. Sarah Timmons, the sum of $117.69. This sum will pay .24.40 on the dollar, thus showing that all that these plaintiffs are entitled is $40.21.   A little reflec-tion will convince any one of the danger to the administra-tors in case the doctrine of the Circuit Judge should be en-forced against them.   By the verdict of the jury the plain-tiffs are entitled to $156.20, Johnson, Crews & Co. are en-titled to the same verdict ($156.20), and each of the other creditors are entitled to verdicts against them of a few dol-lars, less than the amount still due on their respective claims after allowing a credit thereon of .42.18 on the dollar. Thus it is manifest the judgment on this verdict must be set aside, and a new trial awarded.

Having reached this conclusion, we might rest our judg-ment here, but the other exceptions show that the Circuit

Judge, in his charge, was not as explicit in his declaration of the law as might be desired in relation to the deposit of trust funds in bank. It is no longer an open question in this State that a trust in personalty may be established by verbal declaration. Of course, this testimony should be clear and convincing. Hill on Trustees, sec. 56; Pomeroy's Eq. Jurisprudence, 2 vol., sec. 3100; *Gadsden* v. *Whaley,* 14 S. C., 216. It is also held by our Courts that, as a general rule, so long as property held in trust, or a trust fund, can be traced and distinguished, it will enure to the benefit of the *cestui que trust.* *McNeil* v. *Morrow*, Rich. Eq. Cases, 175. We cannot agree that where trust funds, by way of example, are deposited by the trustee in bank to his individual credit, that the *cestui que trust,* in order to obtain such money, if it is part of his trust estate, must prove that the *identical bills,* or gold coin, or silver coin, just as it was deposited by the trustee, are still on deposit in the bank; for the very idea of a general deposit in bank is that the bank may use the money so deposited, only being responsible to its depositor for the amount of the money so deposited whenever the same shall be called for. As far as the law, in such instances, would go, would be to require proof that the trust funds were deposited by the trustee, and that so much money was still to the credit of the trustee in the bank, by reason of the fact that he had not withdrawn such deposit; the law would not require the bank to be able to produce the exact or identical bills or coins deposited with it by the trustee. Inasmuch as there must be a new trial, we will not go any further in the discussion of this branch of the appeal.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and that the action be remitted to the Circuit Court for a new trial.

MR. CHIEF JUSTICE MCIVER *and* MR. JUSTICE GARY *concur in result only.*