## THE STATE OF NEW JERSEY.

### MAY TERM, 1900.

WILLIAM J. MAGIE, ORDINARY.

ALFRED REED, VICE-ORDINARY.

> 60 333
> 64 290

GEORGE W. ELLICOTT and MATILDA B. BAKER, administrators of Peter H. Baker, deceased, appellants,

*v.*

RICHARD S. KUHL, administrator *de bonis non* of John E. Case, deceased, respondent.

[Filed July 18th, 1900.]

When a trustee has received trust moneys and thereafter dies insolvent, the claim of the *cestui que trust* cannot be preferred over the claims of the general creditors of the deceased, unless it appears that the trust moneys were used by the trustee in the purchase of property which he retained until his death, or were deposited by the trustee in his bank account, a balance of which remained undrawn at his death, or were otherwise traced into specific property left by the deceased, in which cases the claim of the *cestui que trust* is not that of a creditor, but of an equitable owner of the trust funds or that into which they can be traced.

Ellicott *v.* Kuhl.

On appeal from the Hunterdon county orphans court.

The following is the agreed statement of the facts presented to the orphans court, upon which its decree was made, and upon which this appeal is based, no written evidence being taken down in the orphans court:

1. John E. Case died intestate in Hunterdon county in 1863, and John L. Bush and Peter H. Baker were appointed his administrators.

2. As such administrators they received $283.73 to invest for his widow during her life and after her death to be paid to his heirs.

3. This was invested on bond and mortgage and interest paid to the widow.

4. In 1875 John L. Bush died; one John L. Jones was appointed his administrator, and in December, 1877, he received full payment of the mortgage, and on April 1st, 1878, paid the interest to the widow and the principal to Peter H. Baker, as surviving administrator of Case, by check, which was endorsed by Baker, and he drew the money thereon from the bank.

5. No trace of the fund can be found after Baker received this money, although he told the widow, Mary Case, and her children he had it invested.

6. Baker paid the annual interest to Mary Case up to April 1st, 1893, and died intestate September 18th, 1893.

7. The appellants were duly appointed as administrators of Baker.

8. The respondent, in September, 1894, was duly appointed administrator *de bonis non* of the estate of John E. Case.

9. He presented to the Baker estate a claim for said $283.73, alleging it to be a preferred claim, and the orphans court decided that it was a preferred claim, and should be first paid out of the estate of Baker, because it was for trust funds received by Baker.

10. The estate of Baker is insolvent, the claims aggregating $5,355.33 and the assets only $1,709.40.

*Messrs. Fluck & Parker,* for the appellants.

*Mr. Edward P. Conkling,* for the respondent.

MAGIE, ORDINARY.

From the agreed state of the case it appears that Peter H. Baker, the survivor of the two administrators of John E. Case, received payment of a mortgage in which the administrators had invested funds of the estate upon which Case's widow was entitled to interest for her life, and at her death the principal was to be paid to Case's heirs-at-law.

The money secured by the mortgage was paid to Baker in 1878, who died intestate in 1893, and his estate is insolvent.

The respondent, who is the administrator *de bonis non* of Case, has obtained a decree of the orphans court on the agreed upon facts, preferring his claim upon Baker's estate for the money received by Baker upon said mortgage, and appellants, who are Baker's administrators, appeal therefrom.

No opinion was pronounced in the orphans court, but it is intimated in the briefs filed in this appeal that the court deemed itself to be following the decision of this court in *Smith* v. *Combs, 4 Dick. Ch. Rep. 420.*

But there was a radical difference between the facts of that case and those upon which this case must be decided. In that case Vice-Chancellor Bird found, upon the evidence, that the trust funds had been invested by the trustee in bank stock, which he held at the time of his death. The funds were therefore traced to a particular property which the trustee had acquired by their use. It is now a well-settled doctrine that the *cestui que trust* who can trace the trust funds into a particular property may assert a right to that property and its proceeds, if sold, if the proceeds remain traceable and are found in the hands of those who can assert no better right thereto.

Notwithstanding some of the expressions in the opinion of the learned vice-chancellor in *Smith* v. *Combs,* when the facts of the case are considered, I think it clear that he did not intend to express any different doctrine upon the subject than that developed by cases in our own courts.

The earliest case is that of *Nevius* v. *Disborough, 1 Gr. 343,* in which the surviving judges in the supreme court made use of an opinion drawn up by Chief-Justice Ewing, then lately deceased. The facts involved in that case are singularly like those now

before this court. The deceased had converted trust property into money, which could not be distinguished from the mass of his estate. And it was held that the trustee, having made an assignment for the benefit of his creditors, the *cestui que trust* stood on the same footing as other creditors.

The doctrine announced in that case was amply sustained by the decisions cited and relied on by the chief-justice, and has been supported by many cases cited in the full and able brief of counsel for the appellants.

But counsel conceive that the doctrine has been .enlarged and extended by later cases also cited by him. The most interesting and instructive of them is *In re Hallett's Estate, 13 Ch. D. 696,* in which it was held that when a person acting in a fiduciary character places money acquired in that character in his account at a banker's and mixes it with his own on deposit there, what he afterwards draws therefrom will be presumed to be drawn from his own deposit, and what remains on deposit will be presumed to be held for the person for whom the depositor held the money. But I think the doctrine of that case and of others of the same character is not an extension of but merely an application of the original doctrine which has various applications, as declared by our court of errors in *Shaler* v. *Trowbridge, 1 Stew. Eq. 595,* and by Vice-Chancellor Van Fleet in *Standish* v. *Babcock, 7 Dick. Ch. Rep. 628,* for when moneys of a trust fund are traced to the bank account of a trustee or person acting in a fiduciary capacity, and there are moneys remaining in the account to satisfy the whole or part of the fund, the *cestui que trust,* or person whose fiduciary agent has placed the moneys in such an account, may follow and take those moneys, because the presumption is that the moneys previously drawn from the account were rightfully drawn, and were chargeable first upon the private deposits with which the trust funds had been mingled. Thus considered, the whole or part of the trust fund has been traced to the account and found there, and the *cestui que trust* may assert his right to it.

The case of *Standish* v. *Babcock* was reversed in the court of errors, but no dissent from the doctrine I have stated was there expressed. The reversal went on the ground that the trust fund

had been turned into money and used by a trustee in the paying a *bona fide* obligation to a creditor who was wholly ignorant that the payment was made from the proceeds of the trust property. It was held that the creditor might accept such money and retain it against the *cestui que trust,* not because money has no "earmark," but because it passes in all *bona fide* transactions without necessity of inquiry into the title of the debtor who makes the payment. *Babcock* v. *Standish, 8 Dick. Ch. Rep. 376.*

The true doctrine was no doubt applied in *Smith* v. *Combs,* for the trustee had purchased property with the trust funds, and the property remained in his ownership at his death and went to swell the amount of his estate. The *cestui que trust* was, therefore, held entitled to claim its proceeds, not as a preferred debt, but as property to which he had a right as against the deceased, or those who claimed under him.

But it can have no application to a case like that before me, where the trust fund received by the trustee in money is not shown to have been employed by the trustee in the purchase of property, or to have been deposited so that the property purchased, or the balance of the deposit, may be traced as derived from the trust fund.

To prefer the claimant of the trust funds in such a case might, perhaps, be directed by the legislature. But there is no equitable ground upon which the preference of such a claimant can be permitted, unless by proof he traces the trust property into that which remains of the trustee's estate. Here no such proof is advanced. For aught that appears, the trustee may have casually lost the money upon the mortgage, or he may have squandered and wasted it. It is not identified with that remaining in his hands as a part of his estate.

For this reason the decree below must be reversed.