CITY OF LINCOLN V. WILLIAM G. MORRISON ET AL.

FILED MAY 21, 1902.    No. 11,576.

Commissioner's opinion, Department No. 2.

1. **Cestui Que Trust as a Preferred Creditor.** Misappropriation of a trust fund does not entitle *cestui que trust*, merely as such, and for that reason alone, to a preference over general creditors of an insolvent trustee.

2. ————. In order to obtain a preference, *cestui que trust* must show that the estate, out of which he claims such preference, has been increased to some extent by the misappropriation of the trust property; and he is entitled to a preference to the extent of such increase only.

3. **Trust Money: Trustee's Funds: Mingling: Charge Upon Whole Mass.** Where a trustee mingles trust moneys with his own funds, *cestui que trust* is entitled to a charge upon the whole; and so long as any portion of the mass into which the trust fund has entered remains in any form, it is subject to such charge, and may be followed and claimed.

4. **Cestui Que Trust: Onus Probandi.** The burden is upon *cestui que trust* to show that the trust money did in fact increase the estate out of which he seeks a preference, or is represented therein in some form. But it seems that where such money has gone into the general estate of a trustee, who afterwards becomes insolvent, there is a presumption that it remains therein at his insolvency and the court will not say that it can not be traced or has wholly disappeared where the contrary may fairly be inferred.

5. ————: **Presumption.** It is presumed that moneys drawn out of a fund wherein the trustee has mingled his own money and that of *cestui que trust* are his own, and, so long as any portion of the fund so constituted remains, it may be followed, and the charge of *cestui que trust* thereon may be asserted.

6. ————: **Preference of Creditors.** But if the whole of such fund, or a greater portion thereof than that representing the trustee's own money is used by an insolvent trustee in paying his debts, *cestui que trust* is not entitled to a preference over general creditors for the amount of his money so lost.

7. - ————: **Lien or Claim.** Property or assets of the insolvent trustee acquired before, or with the proceeds of property held before, the trust money came into his hands, and not in any way mingled therewith, are not subject to any lien or claim in *cestui que trust*.

and the rights of the latter with respect thereto are those of a general creditor only.

8. ———. A change in the form of a portion of a fund in which money of the trustee personally and of *cestui que trust* has been mingled is not necessarily a withdrawal of such portion. When the trustee retains such portion and dissipates the remainder, the portion retained in the altered form is taken to represent such fund and may be claimed by *cestui que trust*.

9. ———: TRUST MONEY. Where a portion of a fund made up of trust money and of individual money of the trustee is invested, and a profit results, *cestui que trust*, in following the trust money into the investment, may claim such profit as the proceeds of the original funds upon which he had a charge, at least to the extent of said charge upon the original fund.

10. **Stare** Decisis. *Capital Nat. Bank v. Coldwater Nat. Bank*, 49 Nebr., 786, and *State v. Midland State Bank*, 52 Nebr., 1, limited. *State v. Bank of Commerce* 54 Nebr., 725, and *Morrison v. Lincoln Savings Bank & Safe Deposit Co.*, 57 Nebr., 225, adhered to.

ERROR from the district court for Lancaster county. Tried below before HOLMES, J. *Reversed.*

*Lambertson & Hall,* for plaintiff in error.

*Tibbets Bros., Morey & Anderson* and *Lionel C. Burr,* contra.

POUND, C.

This is a petition in error prosecuted by the city of Lincoln, an intervener in a suit brought to wind up the Lincoln Savings Bank & Safe Deposit Company, other phases whereof have been before this court several times. The plaintiff in error by its petition in intervention sought a preference over general creditors for some $5,000 —a balance of moneys of said city loaned to the bank upon certificate of deposit by the city treasurer, in contravention of law and with knowledge on the part of the bank officers as to whose money it was. It appeared from a stipulation of the parties and from the evidence adduced that on April 9, 1895, the city treasurer placed $6,095.35 of the city's funds in the bank, taking a certificate of deposit therefor. Afterwards $1,095.35 was paid on the

certificate, and a new certificate was issued for $5,000. After said deposit was made, the bank had on deposit, in all, about $240,000, of which $41,699.96 was on hand in cash. On December 16, 1895, the bank suspended. At that time the deposits had fallen to about $150,000, or, to be precise, $92,453.43 had been paid out to depositors between the time when the city's money had been placed in the bank and the date of suspension. No money was loaned and no investments were made during this period, except that on April 16, 1895, the bank bought state warrants of the market value of $36,750, using in payment therefor $1,750 of the cash on hand, and $35,000 borrowed of a bank in New York. The remainder of the cash on hand on April 9, 1895, and such moneys as accrued from collection or sale of paper already in the bank, it used in paying depositors and in running expenses. At the time the bank suspended there was but $200 cash on hand. This sum had been pledged to secure sureties upon a supersedeas bond in a case wherein judgment had been rendered against the bank, and was afterwards applied upon such judgment. A receiver was appointed on January 22, 1896. When he took possession he received $1,562.61 in cash, and "cash items" to the amount of $239.07. He also received $3,334.37 from sale of the warrants above referred to; such sum being the $1,750 originally invested therein, and the profit after repaying the money borrowed to make the purchase. But it appears from the evidence that the cash and cash items which came into the hands of the receiver accrued from loans made by the bank, or from paper which it held, before the city's money was deposited therein. The district court, upon this testimony, found generally for the receiver and dismissed the city's petition.

Under the rulings of this court in *Morrison v. Lincoln Savings Bank & Safe Deposit Co.*, 57 Nebr., 225, and *State v. Bank of Commerce*, 54 Nebr., 725, several of the questions raised may be disposed of readily. But the former case does not of necessity involve the questions presented

by the case at bar, nor were the facts such as to require
an affirmance of *State v. Bank of Commerce, supra;* while
the latter case is vigorously assailed by counsel and we
are asked to overrule it, and to reaffirm the rule recog-
nized in prior decisions. Ordinarily we should not feel
justified in reviewing a question determined by two re-
cent decisions of this court. Were it a mere matter of
these two decisions, so long as we feel satisfied that they
are sound, we should do no more than cite them and pro-
ceed to apply them to this controversy. But in several prior
cases, *State v. State Bank of Wahoo,* 42 Nebr., 896, *State
v. Midland State Bank,* 52 Nebr., 1, and especially *Capi-
tal Nat. Bank v. Coldwater Nat. Bank,* 49 Nebr., 786, this
court had expressly or by strong implication recognized
and adopted a different rule. The cases last cited are
sought to be distinguished in *State v. Bank of Commerce,
supra.* Counsel have pointed out, however, that the at-
tempt to distinguish the latter case from *Capital Nat.
Bank v. Coldwater Nat. Bank, supra,* is founded on an
entire misapprehension of the facts there presented; and,
in any event, the reasoning in these two cases and the
authorities severally relied on therein can not be recon-
ciled. For this reason we think it expedient to state
plainly that this court no longer adheres to the extreme
view as to the right of *cestui que trust* to be preferred on
insolvency of the trustee, expressed in the cases of *State
v. State Bank of Wahoo, State v. Midland State Bank,*
and *Capital Nat. Bank v. Coldwater Nat. Bank,* but ad-
heres to the position taken in *State v. Bank of Commerce*
and *Morrison v. Lincoln Savings Bank & Safe Deposit
Co., supra;* to set forth our reasons for rejecting the one
view and adopting the other; and to state as clearly and
definitely as we may the rules by which causes such as
the one at bar are to be decided.

The origin of the rules now recognized with respect to
following trust money which has been mingled with the
personal funds of the trustee or has passed into his gen-
eral estate, is to be found in the opinion of Jessell, M. R.,

in *Knatchbull v. Hallett*, 13 Ch. Div. [Eng.], 696-753. Prior to that decision it was said that money had no ear-mark, and that when a trust fund, in the form of money, became mingled with the moneys of the trustee person-ally, it lost its identity and could not be traced. Since that vigorous and convincing judgment, the idea that money, as such, could not be traced, and that trust prop-erty lost its identity when turned into money and con-fused with the trustee's funds, has been abandoned com-pletely. But the limits of the extension of the rights of *cestui que trust* with respect to the property of insolvent trustees to which the decision in *Knatchbull v. Hallett* gave rise, were not perceived at first. All which that de-cision did was to wipe out the old dogma that money had no earmark, and to substitute the sensible rule that when-ever trust property enters into a mass, to which the prop-erty of *cestui que trust* and that of the trustee have con-tributed, so long as the trust property remains in or forms a part of such mass, *cestui que trust* has a claim or charge thereon to that extent, and general creditors can not take advantage of, or derive a benefit from, the increase in the assets due and traceable to misappropriation of the trust fund. Several courts in this country, however, went much further, and established a rule which, though generally abandoned or modified in the more recent authorities, is still adhered to in some quarters, and at one time had the support of decisions of this court. *McLeod v. Evans*, 66 Wis., 401, 28 N. W. Rep., 173; *First Nat. Bank v. Hum-mel*, 14 Colo., 259, 23 Pac. Rep., 986; *Peak v. Ellicott*, 30 Kan., 156, 1 Pac. Rep., 499; *Myers v. Board of Educa-tion*, 51 Kan., 87, 32 Pac. Rep., 658; *Evangelical Synod v. Schoeneich*, 143 Mo., 652, 45 S. W. Rep., 647; *Tierman's Ex'r v. Security Building & Loan Ass'n*, 152 Mo., 135, 53 S. W. Rep., 1072; *Independent District v. King*, 80 Ia., 497, 45 N. W. Rep., 908; *Davenport Plow Co. v. Lamp*, 80 Ia., 722, 45 N. W. Rep., 1049. The supreme court of Iowa has receded somewhat in *District Township of Eu-reka v. Farmers' Bank*, 88 Ia., 194, 55 N. W. Rep., 342.

And a divided court in Wisconsin has overturned *McLeod v. Evans, supra,* which was itself the decision of a divided court. *Nonotuck Silk Co. v. Flanders,* 87 Wis., 237, 58 N. W. Rep., 383. See, also, *Bircher v. Walther,* 63 S. W. Rep. [Mo.], 691. But this court, in *Capital Nat. Bank v. Coldwater Nat. Bank, supra,* expressly refused to follow the silk company case, and adhered to *McLeod v. Evans.* In the view of these authorities, if trust property has been misappropriated and has gone into the estate of the trustee, *cestui que trust* is to be preferred, and is to receive his money to the exclusion of general creditors. As the court put it in *Capital Nat. Bank v. Coldwater Nat. Bank, supra,* the question is not one of identifying or claiming a sum actually deposited, but of compelling the insolvent to first restore the trust property, treating that as something which he had no power to commingle with other funds, but must keep whole and make up so long as he has any funds or property out of which to do so. Other cases do not go so far expressly, but reach the same result, either by holding that, if the insolvent trustee uses the whole fund to pay his debts, the effect is to increase his general estate and create a charge thereon in favor of *cestui que trust,* or by ruling that when the trust fund is once traced into the general property of the trustee it is conclusively presumed to remain there. *McLeod v. Evans, supra; Peak v. Ellicott, supra; Myers v. Board of Education, supra; Independent District v. King, supra.*

We are not able to agree to the rule just stated in any of the forms which it has assumed. We are satisfied that the court did well when in *State v. Bank of Commerce* it withdrew its support therefrom, and took a position in accord with the great weight of recent authority. The court was in error in saying (54 Nebr., 731) that the moneys which came into the hands of the receiver of the Capital National Bank on its insolvency were more than sufficient to meet the preferred claims established in *Capital Nat. Bank v. Coldwater Nat. Bank, supra,* and its companion cases. Such sum was greater than the pre-

ferred claim established in any one suit, but the aggregate considerably exceeded it, and the record in each case showed that fact. Hence *State v. Bank of Commerce* is not reconcilable with prior decisions of the court, and must stand on its own foundation, which we think it may do safely. Not only is it in accord with the overwhelming majority of recent decisions upon this point, and with the general tendency to abandon or recede from *McLeod v. Evans* and the cases following that decision, but on principle is clearly right. Of express decisions in the last three years upon this very point, we may cite: *Ellicott v. Kuhl*, 60 N. J. Eq., 333, 46 Atl. Rep., 945; *Collins v. Steuart*, 58 N. J. Eq., 392, 44 Atl. Rep., 467; *Collins v. Lewis*, 60 N. J. Eq, 488, 46 Atl Rep, 1098; *Twohy Mercantile Co. v. Melbye*, 78 Minn., 357, 81 N. W. Rep., 20; *Beard v. Independent District*, 31 C. C. A. [U. S.], 562, 88 Fed. Rep., 375; *Robinson v. Woodward*, 48 S. W. Rep. [Ky.], 1082;*Wulbern v Timmons*, 55 S. Car., 456, 33 S. E. Rep., 568; *Byrne v. McGrath*, 130 Cal., 316, 62 Pac. Rep., 559; *Shute v. Hinman*, 34 Ore., 578, 58 Pac. Rep., 882; *Bircher v. Walther*,63 S.W.Rep. [Mo.],691. These cases,and many others cited in *State v. Bank of Commerce, supra,* and *Morrison v. Lincoln Savings Bank & Safe Deposit Co., supra,* establish clearly that misappropriation of a trust fund does not entitle *cestui que trust,* merely as such, and for that reason alone, to a preference over general creditors of an insolvent trustee. So long as the trust property in any shape or form can be recognized, it belongs to *cestui que trust.* So long as it enters into any fund, property, or mass of assets in any way, *cestui que trust* has a charge or lien which he may enforce upon the whole. But if the trustee "destroys a trust fund by dissipating it altogether, there remains nothing to be the subject of a trust." Wood, V. C., in *Frith v. Cartland,* 2 H. & M. [Eng.], 417. In such case, *cestui que trust* has no specific claim against any property or fund. He is merely a creditor of the trustee, and stands on the same basis as other creditors. The right to a preference is

based on his ownership of some specific fund or assets, or on a claim or charge upon all the fund or assets, because his property is contained in, or has contributed to, them. In other words, to obtain a preference, *cestui que trust* must show that the estate out of which he claims such preference has been increased to some extent by the misappropriation of the trust property, and he is entitled to a preference to the extent of such increase only. This proposition in no way detracts from, and is but another way of stating, the general rule, announced in the cases cited, that where a trustee mingles trust moneys with his own funds, *cestui que trust* is entitled to a charge upon the whole, and, so long as any portion of the mass into which the trust fund has entered remains in any form, it is subject to such charge and may be followed and claimed. In *State v. Bank of Commerce* and *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* it was held that the burden is upon *cestui que trust* to show that the trust money did in fact increase the estate out of which he seeks a preference, or is represented therein in some form. This is only to say that a plaintiff must prove his case. He claims a specific fund as his, or he claims a charge on the general mass of assets, and he must show the facts to justify his claim. But we think this should not be pushed too far. When it is once proved that trust money has gone into the general estate of a trustee who afterwards becomes insolvent, it would seem that we ought to presume, in the absence of other evidence, that it remains therein at his insolvency, and that we ought not to say it can not be traced, or has wholly disappeared, where the contrary may fairly be inferred. *Sherwood v. Central Michigan Savings Bank,* 103 Mich., 109, 61 N. W. Rep., 352; *Independent District v. King,* 80 Ia., 497, 45 N. W. Rep., 908. In the case at bar the city showed that its money was put into and became part of the general fund of "cash on hand" in the bank. It appeared also that the receiver came into possession of cash or "cash items" amounting to some $2,000. If these facts stood alone, we

should feel obliged to allow the city a preference to the extent of what came into the receiver's hands when he took possession. *State v. Bank of Commerce,* 54 Nebr., 725. But as the evidence stands, it is clearly proved that the cash and cash items taken over by the receiver do not represent the city's money in any form. The city's money entered into, and was part of, the $41,000 cash on hand on April 9, 1895. The city had a charge on that fund for its money. Whatever moneys were drawn out of that fund and dissipated are presumed to be those of the bank. The portion that remains in the bank, in whatever form, is taken to be and represents the trust fund, and to be liable to be followed and claimed as such by the city. But if the whole of the cash on hand into which the city's money entered, or a greater portion thereof than that representing the bank's own money, was used in paying off other depositors or in running expenses, the city is not entitled to a preference over general creditors for the amount of its money so lost. *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* 57 Nebr., 225; *Matter of Cavin v. Gleason,* 105 N. Y., 256; *Collins v. Stewart,* 58 N. J. Eq., 392, 44 Atl. Rep., 467; *Ellicott v. Kuhl,* 60 N. J. Eq., 333, 46 Atl. Rep., 945.

All of the cash on hand after the city's money became mixed therein, with the exception of the $1,750 used in the purchase of warrants, which will be considered presently, and the $200 in the bank when it suspended, was used in paying debts and expenses. The $200, as has been seen, was pledged to indemnify sureties on the bank's bond, was afterwards paid on the judgment superseded thereby, and never came into the receiver's control. In other words, except said sum of $1,750, it was wholly dissipated. Although there are decisions to the effect that the mere fact of use of the money in the trustee's general business or in paying his debts is, in effect, an increase of the assets, and suffices to create a charge thereon, that position is entirely at variance with the principle by which such cases must be governed, and is repudiated by all the

later authorities. *Spokane County v. First Nat. Bank,* 29 U. S. App., 707, 68 Fed. Rep., 979; *Metropolitan Nat. Bank v. Campbell Commission Co.,* 77 Fed. Rep., 705; *Boone County Nat. Bank v. Latimer,* 67 Fed. Rep., 27; *Bircher v. Walther,* 63 S. W. Rep. [Mo.], 691. As the court said in *Spokane County v. First Nat. Bank, supra,* "Even if it is proven that the trust fund has been but recently disbursed, and has been used to pay debts that otherwise would be claims against the estate, there would be manifest inequity in requiring that the money so paid out should be refunded out of the assets, for, in so doing, the general creditors, whose demands remain unpaid, are in effect contributing to the payment of the creditors whose demands have been extinguished by the trust fund." Moreover in this case the money which came into the hands of the receiver when he was appointed was the proceeds of loans made before the city's money came into the bank. For reasons already stated, it must be manifest that property or assets of the insolvent trustee acquired before, or with the proceeds of property held before, the trust money came into his hands, and not in any way mingled therewith, are not subject to any lien or claim in *cestui que trust,* and that the rights of the latter with respect thereto are those of a general creditor only. *District Township of Eureka v. Farmers' Bank,* 88 Ia., 194, 55 N. W. Rep., 342.

We come now to the money derived from sale of the warrants. It will be remembered that after the city's money came into the bank it bought the warrants, using $1,750 of the moneys in which the funds of the city had been mixed, and $35,000 borrowed on security of the warrants. The receiver contends that since there was over $40,000 in cash in the bank at the time, of which but $6,000 belonged to the city, it will be presumed that the $1,750 was the bank's own money. Such would be the case, without doubt, had the bank withdrawn the money and dissipated it in some fashion. But it did not do this. It merely changed the form of a portion of the fund in which

the city's money had been wrongfully mixed. After purchase of the warrants, said fund was represented by the cash still in the bank, and by the bank's interest in the warrants. State warrants are readily convertible into cash. If the bank preferred to keep part of its cash fund as warrants, the identity of the fund was not changed. So long as any portion of the fund into which the city's money entered may be traced into money which came to the receiver, the city may assert the claim which it had upon the whole fund. The warrants were all that remained of that fund. In accordance with the presumption that whatever was retained and not dissipated was the city's money and not the bank's, these warrants and their proceeds in the hands of the receiver represent money to which the city has a prior claim, and in which general creditors have no right to share. The city's right to follow the money does not fail because no one can say what part of the cash on hand in the bank went into the warrants. The city had a charge upon the whole in any form in which the bank might keep it. When all was wasted except the warrants, that charge remained upon them, because they were a part of that fund, though in an altered form. *Knatchbull v. Hallett,* 13 Ch. Div. [Eng.], 696; *Importers & Traders' Nat. Bank v. Peters,* 123 N. Y., 272; *Byrne v. McGrath,* 130 Cal., 316, 62 Pac. Rep., 559; *Farmers & Mechanics' Nat. Bank v. King,* 57 Pa. St., 202; *Smith v. Combs,* 49 N. J. Eq., 420, 24 Atl. Rep., 9; *Third Nat. Bank v. Stillwater Gas Co.,* 36 Minn., 75, 30 N. W. Rep., 440. We do not think this view of the transaction in question conflicts in any way with the holding of Bradley, J., in *Frelinghuysen v. Nugent,* 36 Fed. Rep., 229, followed in *Central Nat. Bank v. Connecticut Mut. Life Ins. Co.,* 104 U. S., 54, and *Peters v. Bain,* 133 U. S., 670, and approved in *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* 57 Nebr., 225. In *Frelinghuysen v. Nugent* the cashier of a bank had wrongfully turned over large sums to a partnership engaged in manufacturing, under such circumstances as to make the latter constructive trus-

tees. The evidence indicated that the money had been entirely dissipated, and there was nothing to show that the stock on hand represented the trust fund, or a fund with which it had been mixed in any form. On the contrary, it was clear that said stock had been bought recently on credit, and represented the debts of general creditors. But in the case at bar a portion of the fund into which the city's money entered is traced directly into the warrants, in which form that portion was held till the bank suspended. The warrants were a cash asset, and the money thus held was still fairly to be called a part of the cash fund. It was not made away with, and it came into the receiver's hands, on sale of the warrants, as the last remnant of the fund with which the city's money had been mixed. The city had a charge upon the warrants, as upon the fund with a portion whereof they were bought, for the full amount of its moneys contained in said fund. Hence its claim upon the proceeds is not limited to the $1,750 which was used in buying them, but extends to the profit accruing therefrom, as well. The $3,334.37 which came into the hands of the receiver upon sale of the warrants, represents the cash fund in which the city's money was mixed, and the profits of an investment of that fund. The profits of trust money belong to *cestui que trust*, and we see no warrant for limiting recovery to the actual sum invested, especially when there is not enough, in any event, to satisfy the charge on the original fund. *Farmers & Traders' Bank v. Kimball Milling Co.*, 1 S. D., 388, 402, 36 Am. St. Rep., 739; *Brown v. Rickets*, 4 Johns. Ch. [N. Y.], 303; *Frank's Appeal*, 59 Pa. St., 190; *Butler v. Hicks*, 11 Smed. & M. [Miss.], 78.

We therefore recommend that the order of the district court be reversed, and the cause remanded with directions to enter a new order granting the city a preference to the extent of the proceeds of said warrants, namely, $3,334.37.

Barnes and Oldham, CC., concur.

By the Court: For the reasons stated in the foregoing

opinion, the order of the district court is reversed and the cause is remanded with directions to enter an order granting the plaintiff in error a preference to the extent of $3,334.37.

REVERSED AND REMANDED.