Penney v. Bryant.

HENRY R. PENNEY ET AL. V. THOMAS BRYANT ET AL.

FILED OCTOBER 7, 1903. No. 12,950.

1. **Corporation**: LIABILITY OF AGENT. An officer or agent of a corporation is not liable personally to third persons for mere failure to perform some duty which the corporation may have owed them.

2. **Action:** JOINT AND SEVERAL LIABILITY. Where a joint liability is asserted against several defendants, in order to maintain an action against one or more of them in a county other than that wherein they reside or are found, the latter are not to be held upon a different and several liability, even though it is disclosed by the pleadings and proofs.

ERROR to the district court for Douglas county: WIL-LARD W. SLABAUGH, JUDGE. *Affirmed.*

*Carroll S. Montgomery* and *Mathew A. Hall,* for plaintiffs in error.

*Edmund M. Bartlett, Charles L. Dundy* and *Edwin M. Martin, contra.*

POUND, C.

As stated by counsel, this action "was brought by the plaintiffs for the recovery of damages in the alleged sum of $1,000 of and from the defendants upon the ground that the defendants had wrongfully and unlawfully caused the First National Bank of Schuyler, Nebraska, to divert and misappropriate, and prevented it from paying to the plaintiffs the sum of $668.95, which the plaintiffs, in their firm name of H. R. Penney & Co., had on deposit in said bank, on and after July 21, 1900, subject to check or draft, and justly payable on demand and due from the said bank to the plaintiffs." It appears that, prior to the time the controversy arose, plaintiffs were conducting a so-called brokerage business in the city of Omaha and had as correspondent at Schuyler one Brown, doing business under the name of Black & Co. Brown testified, to use his own words, that he was "running a bucket-shop in Schuyler, transacting business with H. R. Penney & Co." When asked his meaning, he stated that he was "dealing in the grain market, or supposedly in the grain market," and that he did not know whether he was buying grain or not, and could not state just what the transactions in which he was engaged were. As money was paid to Black & Co.

from time to time in the course of the business, Brown deposited it in the defendant bank and at once advised plaintiffs of the deposit.  One Louis T. Bryant, son of the defendant, Thomas Bryant, was dealing with Black & Co. During the two months prior to July 1, 1900, he paid to them on certain pretended purchases of grain sums of money aggregating $490, which were deposited in the defendant bank to the credit of the plaintiffs.  On July 21, 1900, the plaintiffs drew upon the bank for the sum of $600.  Payment of this draft was refused, and the cashier, one of the defendants herein, notified the plaintiffs that the sum of $522.50, out of the balance of $668.95 to the credit of the plaintiffs in the bank, was claimed by the said Louis T. Bryant.  Thereupon, the plaintiffs wrote to the bank demanding payment of the money, and were informed by the cashier that the bank had been garnisheed. On behalf of the defendants, the evidence tends to show that, prior to the time when the draft was presented, the said Louis T. Bryant had notified the bank of his claim to the money, and that on July 25, and prior to the letter last referred to, said Louis T. Bryant had brought an action in the district court for Colfax county against plaintiffs, in their partnership name, and had garnisheed the bank.  The present action was brought in Douglas county against the president and cashier and the bank, the bank apparently being served in Colfax county and brought in on the ground that a joint liability was asserted against all of the three defendants.  The trial court found generally for the defendants, and dismissed the action.

It is beyond controversy that the money was received by Black & Co., as margins put up in a bucket-shop transaction, and that neither Black & Co. nor plaintiffs gave any other or further consideration therefor whatever.  Hence, we think plaintiffs could be held by Louis T. Bryant, as constructive trustees, so long as the money or some part of it remained in their hands.  The course of dealing between the parties was nothing more nor less than gambling upon the price of grain, and, in effect, the plaintiffs

12

had so much money of said Louis T. Bryant in their pos-
session, which they held without consideration, and to
which he was entitled. But, in case a person chargeable
as constructive trustee deposits the money in a bank, the
bank, on receiving notice of the claims of the owner, be-
comes a trustee also, and may be held as such. Hence, if the
moneys in the bank on July 21, 1900, represented or con-
tained, in whole or in part, the moneys paid to Black &
Co. by said Louis T. Bryant, the latter, after notifying
the bank of the facts, was entitled to insist that they be
held and not paid out to the plaintiffs, and to charge the
bank if it disbursed them notwithstanding. There is evi-
dence that checks were drawn from time to time against
the deposit, but it is not shown that it fell below the sum
claimed, at any time from the date when Black & Co. re-
ceived the money to the date of the draft. This evidence
is not sufficient to prove that the balance remaining on
July 21, 1900, did not contain or represent the trust fund.
*City of Lincoln v. Morrison*, 64 Neb. 822. Consequently,
we are inclined to the opinion that when the bank was
notified that moneys on deposit were claimed by a third
person as held in trust for him by the depositor, it might
properly refuse for a reasonable time to pay out such
moneys, until the ownership was settled by interpleader or
other appropriate proceeding, or the facts were fully as-
certained.

When, however, the said Louis T. Bryant brought an
action against the plaintiffs for money had and received
and garnisheed the defendant bank, he abandoned his
claim upon the specific fund, and recognized plaintiffs as
the owners thereof. Hence, if it were a mere question of
whether the bank is or is not indebted to plaintiffs in the
amount of the deposit, it would be necessary for us to in-
quire into the validity of the garnishment proceedings.
But, in the present action, we do not think that matter
involved in any way. An officer or agent of a corporation
is not liable personally to third persons for mere failure
to perform some duty which the corporation may have

owed them.    The rule, in this respect, is well stated by a
learned text-writer:

"Where the wrong done consists of mere *nonfeasance*—
of the mere failure to perform some duty which the cor-
poration, his principal, owes to the plaintiff—then, the
corporation only is liable; but where it consists of mis-
feasance—an affirmative act wrongfully ordered or done
against the plaintiff—then, he can not escape liability by
setting up that it was the act of the corporation; for, al-
though the corporation may be liable, he may be liable
also; he as a personal trespasser; it, on the principal of
*respondeat superior.* It is, in the eye of the law, like other
cases of joint trespass." 4 Thompson, Corporations, sec.
4669.

The president and cashier of the bank, in this case, did
nothing more than refuse to pay out the money upon
plaintiffs' draft and the subsequent demand by letter.
There was no conversion or misappropriation of the fund;
it was simply held to await the result of the garnishment
proceedings.    All that can be charged is that, the bank
being under a duty of paying the money to plaintiffs, its
officers did not perform that duty.    In other words, plain-
tiffs' case is one of nonfeasance, so far as the president and
cashier of the bank are concerned, not of misfeasance or
active trespass or wrongdoing.    It follows that the de-
fendants, Bryant and Rathsack, are not liable in this ac-
tion; and, this being so, we do not think the bank may
be held.    Where a joint liability is asserted against several
defendants, in order to maintain an action against one or
more of them in a county other than that wherein they
reside or are found, the latter are not to be held upon a
different and several liabilty, even though it is disclosed
by the pleadings and proofs.    *Stewart v. Rosengren,* 66
Neb. 445.    From the pleadings it is evident that the de-
fendant, the First National Bank of Schuyler, was not and
could not have been served with process in Douglas county.
The district court had a right to, and doubtless did, take
judicial notice of its own record in the case then before it,

and of the process and return by which it acquired juris-diction. *Stewart v. Rosengren, supra.* Hence, although the pleadings and the evidence may have disclosed facts sufficient to entitle the plaintiffs to recover the amount of the deposit from the bank, in an action for that purpose, the trial court was not in error in rendering judgment for all the defendants.

We therefore recommend that the judgment of the district court be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.