## ABIGAIL Q. VANFLEET

*v.*

## MARTHA QUICKSALL and WILLIAM H. HAINES, executors of George W. Quicksall, deceased.

[Decided November 23d, 1918.]

1. Where all of the estate of a life tenant charged with the payment of a legacy to remaindermen was bequeathed to one of the remaindermen, his executors must respond, although the legacy has no ear-marks of identification.

2. If the life tenant got the entire principal of the legacy, where she had the right to use as much thereof as was necessary for her support, the fact that she mingled the legacy with her own funds would not, in the absence of fraud, require the executors of one to whom she bequeathed her entire estate, chargeable with the payment of the legacy, to account for the entire amount.

On bill, &c.

*Mr. W. Holt Apgar,* for the complainant.

*Mr. Linton Satterthwaite,* for the defendants.

BACKES, V. C.

This bill is to recover a legacy. Elizabeth Zelley died in 1874, leaving an estate inventoried at $2,224. She directed her executrices, her two sisters, Jemima and Julia A. Zelley, to invest $2,000, they to receive the income for life, and

"if it should so happen that said income with that from their other moneys is inadequate for their support, they and the survivor of them are authorized to use so much of the principal as they or she may need, even if it should take the whole."

Of what remained, $100 was given to her nephew James R. Zelley, the residue to be equally divided among her niece Elizabeth Z. Quicksall, and her two nephews George W. Quicksall and Aaron Quicksall. The executrices did not account.

Jemima Zelley died intestate, in 1879, and her net estate of $1,923.24 was distributed among her next of kin by Julia, her administratrix.

Julia died in 1890 testate, bequeathing her residuary estate to her nephew George W. Quicksall, whom she appointed executor. He qualified and accounted, charging himself with a net balance of $3,073.82. He paid the bequest of $100 to James R. Zelley.

George W. Quicksall died in 1901 testate, leaving his estate to his executors, the defendants, in trust to pay the income to his widow for life, with remainder over to various legatees. The executors accounted in the orphans court and now hold $3,218.52 in trust under the terms of the will.

Elizabeth Z. Quicksall and Aaron Quicksall, two of the beneficiaries, in remainder, of the $2,000 legacy created by the will of Elizabeth Zelley, died in 1879 intestate. Aaron left surviving him the complainant, his daughter and administratrix, who sues to recover the share bequeathed to her father. She claims it upon the theory that the full amount of the legacy came to the possession of Julia, and upon her death to George W. Quicksall, her executor, and, upon his death, to his executors, from whom she seeks an accounting. If the whole or any part of the fund held by Julia came to the hands of George W. Quicksall, his executors, undoubtedly, must respond. The defendants insist that the court is without jurisdiction and that there can be no recovery unless the trust fund held by Julia can be traced and identified among the assets of George W. Quicksall in the hands of his executors, the defendants, and cite the following cases to support the proposition: *Ellicott* v. *Kuhl, 60 N. J. Eq. 333; Collins* v. *Lewis, 60 N. J. Eq. 488; Heinisch* v. *Pennington, 73 N. J. Eq. 456; Harrison* v. *Fleischman, 70 N. J. Eq. 301; Pierson* v. *Phillips, 85 N. J. Eq. 60; Fidelity Trust Co.* v. *Federal Trust Co., 87 N. J. Eq. 550; Bank Commissioners* v. *Security Trust Co., 70 N. H. 536; Little* v. *Chadwick, 151 Mass. 109; Lowe* v. *Jones, 78 N. E. Rep. 402; Hewitt* v. *Hayes, 91 N. E. Rep. 332; Lincoln* v. *Morrison, 90 N. W. Rep. 905.*

Upon examining these authorities it will be found that they deal with efforts to gain preferences by impressing trusts upon the assets of estates held for the benefit of creditors generally, or

to impress a trust upon specific property to which the fund held in trust bore no direct relation. This case is of neither sort. Here the object is to establish a claim against the executors, to the amount of a trust fund which came to the hands of their testator and which he applied to his own use. To entitle the complainant to a recovery, in such circumstances, requires no "ear-marks" of identification. All of Julia's estate charged with the payment of a legacy came to the possession of the defendant's testator, for which he, if living, could have been called upon to account, and that duty is now devolved upon his executors. *Smith* v. *Moore, 4 N. J. Eq. 485; Carpenter* v. *Gray, 37 N. J. Eq. 389; Evans* v. *Evans, 57 Atl. Rep. 872.* See, also, *Lightfoot* v. *Davis, 198 N. Y. 261.*

The question, then, is: For what sum must the estate of George W. Quicksall respond? Surely for no more of the legacy than came to the hands of Julia, and for no more thereof than remained unexpended at the time of her death, for she had the right to use the whole of it. Now, how much did she get? Elizabeth Zelley's estate of $2,224 comprised a bond, notes, household goods and wearing apparel. How much of this was realized in cash, and what was used to pay funeral expenses and debts, there is no means of knowing. That $2,000 in cash was available for the legacy is doubtful. Moreover, did Julia receive all that remained or did her co-executrix take some, and how much? This is beyond establishing.

Even if we assume that she got $2,000, she had the right to use it. She and her sister were authorized to use as much of the principal of the legacy as they might need, if the income thereof, together with that from their own moneys, was not adequate for their support. The two sisters, Jemima and Julia, lived together. The sum of their combined estates was small. It is barely possible, but highly improbable, that the income was sufficient for their maintenance. Julia was an invalid for years, and I have little doubt that many times they had to call upon the principal to square deficiencies. To say how often, and to what extent, would be mere guess-work. It is claimed, however, that it was Julia's duty to keep a strict account of her trusteeship, and for her failure to do so, the accounting should be for the

full amount she charged herself with by her inventory of Elizabeth Zelley's estate, viz., $2,224. Vice-Chancellor Pitney's ruling in *Hunt* v. *Smith, 58 N. J. Eq. 25*, is relied upon, but the measure of accountability there applied, under somewhat different circumstances, and which, as a rule, is enforced only when dereliction of duty appears is too rigorous in circumstances like the present, where the trustee's power over the funds was tantamount to ownership. The more equitable doctrine is that of *Cox* v. *Wills, 49 N. J. Eq. 573*. There the testator gave a legacy to his widow, of which she was by will to distribute among his near relatives so much as she should not use for her comfortable maintenance. She mingled the legacy with her own funds, and upon a bill filed by her executrix, for instructions, Mr. Justice Scudder, speaking for the court of errors and appeals, said: "That she should have kept the trust fund received from her husband's estate separate from her own, and charged the expenses of her maintenance to this fund, is now evident. But by mingling this with her own she incurred no penalty or forfeiture, without fraud, of which there is no pretence in the case. *Pratt* v. *Douglas, 11 Stew. Eq. 516, 540*. Equity will follow and separate them and will put upon the trustees the burden of distinguishing what is his. *Central Bank of Baltimore* v. *Connecticut Mutual Life Insurance Co., 104 U. S. 54; Perry Trust § 447.*"

It is impossible, of course, at this late date to make an accurate separation. Enough appears, however, to show that from Elizabeth Zelley's death, in 1874, to the death of Julia, in 1890, at least all in excess of $1,000 was absorbed under the authority of the will for the support of the life tenants. More may have been, but I stop at that amount, and for this reason: On March 25th, 1879, Julia invested $1,000 on a bond and mortgage of Benjamin F. Schuyler's, executed to her as "surviving executrix of Elizabeth Zelley, deceased." The bond and mortgage came to the possession of George W. Quicksall, and his executors, the defendants, collected $500, the balance then due. Five hundred dollars had been previously paid to Julia on January 14th, 1890, a little more than a month before she died, and, undoubtedly, forms part of the inventory of her estate, under an item of "Cash in Bur-

lington Bank, $1,000." One thousand dollars of the legacy was untouched at Julia's death and passed to the hands of the defendants' testators and eventually to the defendants. Of this $100 was paid to the nephew James R. Zelley, as already stated. The complainant is entitled to a decree for one-third of the remaining $900, with interest from the date of Julia's death, with costs.

The answer sets up that the complainant is in laches, but this defence was not advanced on the argument, and counsel has since informed me that he purposely refrained from pressing it, and, evidently, for the reason that during her minority, the complainant's mother applied to George W. Quicksall, the defendants' testator, for payment of the legacy, which he refused. Later on the complainant and her mother consulted counsel and were advised that she had no claim. Upon this she relied until recently, when she was correctly informed of her rights. In the meantime there has been no change in the situation, and the delay has caused no embarrassment to the defendants in presenting their proofs.

The administrator of Elizabeth E. Quicksall is entitled to one-third of the legacy. Elizabeth died single and the complainant is entitled to one-half of her estate, but as her administrator has not asked for relief, no decree can be made in his favor.