L. T. BISHOP v. STEPHEN MAHONEY.[1]

November 24, 1897.

Nos. 10,929—(120).

**Bank — Insolvency — Following Trust Funds by Cestui — Burden of Proof.**

Conceding, without deciding, that plaintiff stood in a fiduciary relation to the insolvent, and that certain funds which came to the hands of the latter were trust funds which it held as trustee for the former, *held* plaintiff has not traced these funds into the hands of the receiver of the insolvent, and is not entitled to a preference over the other creditors of the insolvent.

In the district court for Hennepin county L. T. Bishop made a motion for an order requiring Stephen Mahoney, the receiver of the Irish-American Bank, insolvent, to pay over to petitioner the sum of $500 or to retain said sum until the final determination of an action brought by the petitioner against said bank. From an order,

[1] Reported in 73 N. W. 6.

Elliott, J., restraining the receiver from paying out the money until the further order of the court, petitioner appealed. Affirmed.

*Choate & Merrill*, for appellant.

*Stephen Mahoney*, for respondent.

CANTY, J.

Some time prior to June 15, 1895, the petitioner placed in the hands of one Anson for collection a promissory note on which there was due and unpaid a balance of $516.33. On that day the maker of the note paid this balance to Anson by the check of a third party on the Hennepin County Savings Bank for that amount. Anson kept an account at the Irish-American Bank of Minneapolis and deposited the check to his credit in that bank, and at the same time sent petitioner a draft on that bank for $500, the balance of $16.33 being retained by him as his commission for making the collection. At this time Anson was himself doing business as a banker, and on June 18, 1895, after he had sent the draft and before it was presented to the Irish-American Bank for payment he, as a banker, suspended payment, and being insolvent made an assignment for the benefit of his creditors on July 3, 1895. At these times he was indebted to the Irish-American Bank in an amount exceeding $500. The latter bank applied his deposit on this indebtedness to it, and when the draft was presented payment was refused.

Thereupon petitioner brought an action against the latter bank, and in his complaint asked that the bank be declared his trustee by reason of its having received from Anson the check which Anson received in payment of the note. On the trial of that action the court found all of the foregoing facts, found also that plaintiff never authorized Anson to deposit this check in the Irish-American Bank, and ordered judgment against the bank for the sum of $500, and interest thereon since the time the check was so deposited. Some time after the commencement of that action, but just when does not appear, the Irish-American Bank, being insolvent, closed its doors and made an assignment for the benefit of its creditors. The assignee was also appointed receiver in proceedings under G. S. 1894, c. 76.

Thereupon on March 9, 1896, the petitioner applied to the court

in the insolvency proceedings of the Irish-American Bank for an order requiring the assignee of that bank to pay over to petitioner the sum of $500. All of the proceedings in the action against the bank are set out in the petition and it is stated that judgment had not yet been entered in that action. On the hearing the court denied the application, and from the order denying the same the petitioner appeals.

Conceding, without deciding, that the decision of the court in said other action was correct or was binding in this proceeding, whether correct or not we will proceed to determine whether petitioner has traced the trust fund in any form into the hands of the receiver.

As to how far a cestui que trust can follow trust funds after they have been converted into money and mixed with the other money of the trustee there are four lines of decisions:

(1) A trust fund may be recovered back when it has been wrongfully converted into some other species of property, if its identity can be traced; but the right to recover it ceases when it has been converted into money and mixed with the other money of the trustee so that it cannot be distinguished from such other money. See Whitecomb v. Jacob, 1 Salk. 160; Taylor v. Plumer, 3 Maule & S. 562, 574; Ex parte Dale, 11 C. H. Div. 772; Billingsley v. Pollock, 69 Miss. 759, 13 South. 828; Commercial v. Davis, 115 N. C. 226, 20 S. E. 370; Lebanon Trust, 166 Pa. St. 622, 31 Atl. 334; 2 Story, Eq. Jur. §§ 1258, 1259; 2 Pomeroy, Eq. Jur. §§ 1051, 1058.

(2) The trust fund may be recovered back even if it is indistinguishably mixed with the other money of the trustee, if, without the aid of the presumption mentioned in the next proposition, it appears that the identical money of the trust fund is in the mixture. See Philadelphia v. Dowd, 38 Fed. 172; Metropolitan v. Campbell, 77 Fed. 705, and cases cited.

(3) The trust fund may be recovered back even if it does not so appear that the identical money of the trust fund is in the mixture, if it appears that, since the confusion of the funds there has always remained on hand a balance of the mixture equal to the amount of the trust fund which originally entered into the mixture. But, if at any time the balance has been reduced to a less amount, then the cestui que trust may recover out of the mixture an amount equal

to the smallest balance which has remained on hand since the moneys were confused. This rule is based on the presumption that the trustee drew first his own money out of the indistinguishable mass, leaving the trust funds in the balance on hand. See Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Nonotuck v. Flanders, 87 Wis. 237, 58 N. W. 383; Continental v. Weems, 69 Tex. 489, 6 S. W. 802; Knatchbull v. Hallett, 13 Ch. Div. 696.

(4) If the trust funds went to augment the estate of the trustee (and not to pay his other debts), the cestui que trust has a lien on the general assets of that estate. See Harrison v. Smith, 83 Mo. 210; Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499; Continental v. Weems, supra; People v. City, 96 N. Y. 32; McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214.

On the point here under consideration the New York and Wisconsin cases cited under the third proposition overrule the earlier cases from those states cited under the fourth proposition, and the English case cited under the third proposition disapproves the earlier English cases cited under the first proposition. It may also be remarked that all of the cases cited under the fourth proposition do not confine the right of the cestui que trust to recover to cases where it appears that the identical money of the trust fund has not been paid out on other debts of the trustee. But certainly cases which go further than proposition 4 in allowing the cestui que trust to pursue the trust fund would never be followed, at least when the assets of the trustee are in the hands of an assignee or receiver in insolvency in a state having such a statute as ours, forbidding preferences among creditors. In Re Seven Corners Bank, 58 Minn. 5, 59 N. W. 633, it affirmatively appeared that the fund sought to be pursued had been paid out by the insolvent on other debts.

It is not necessary in this case to determine which of these four propositions should be held to fix the limit beyond which the money of the trust fund cannot be pursued. The petitioner does not bring himself within any of these propositions. The only proof which petitioner offered to show that this trust fund ever came in any form to the possession of the receiver is the following statement in the petition or affidavit sworn to by the petitioner's attorney:

70 M.—16

"Affiant further states that said five hundred dollars, held by said bank in trust as aforesaid, has passed into the hands of said receiver, and he now has possession of the same as such receiver."

It nowhere appears that the attorney had any personal knowledge of the facts so stated by him. On the hearing, a counter affidavit made by one Davis was read, in which he stated that at the time of the transaction in question

"He was head bookkeeper of the Irish-American Bank, and was familiar with the business transacted therein; that the proceeds of the check mentioned in the complaint of L. T. Bishop against said bank were charged to the account of the Commercial Bank of Excelsior" (Anson's bank) "on the same day on which it was deposited in said Irish-American Bank, and the proceeds thereof became mingled with the other money and property of said bank, and no part of said proceeds were ever kept separate or distinct from other money or property belonging to said bank."

This is all the evidence in the record returned to this court bearing on the question of whether or not the trust fund in any form came to the hands of the receiver. For all that appears, the bank may have continued to do business nearly nine months after the check was so deposited and the proceeds thereof mingled with the bank's funds, and all of these intermingled funds may have gone to pay other depositors of the bank, or may have gone into worthless loans and securities, or may have been dissipated in other ways. It may be that none of the intermingled funds ever came to the hands of the receiver in any form. The burden was on petitioner to trace the trust fund into the hands of the receiver in some form, and he has not maintained that burden.

The order appealed from is affirmed.