CLINTON MINING & MINERAL CO., Appellant, v. TRUST COMPANY OF NORTH AMERICA et al., (Trust Company, etc., Respondent.)

(151 N. W. 998.)

(File No. 3618.    Opinion filed April 6, 1915.)

**1.    Mortgages—Description—After-Acquired    Property—Recital    in Mortgage Bond, Effect of on Mortgage Description—Trusteeship of Property Converted by Mortgagor—Construction.**

Recitals in a corporate mortgage bond secured by mortgage describing, among other things, all lodes and mineral mining property thereafter acquired by mortgagor by location, purchase

or in any other manner, which bond recitals embraced authority to execute a mortgage on all realty and personalty of mortgagor, and on all property it might thereafter acquire "by purchase, location or otherwise," and that the bond is secured by mortgage embracing also all property "now owned or that may hereafter be acquired" by mortgagor, but expressly referring to the mortgage for a description thereof, cannot be resorted to for purpose of extending the import of descriptive words of the mortgage beyond their fair and reasonable meaning, and so as to embrace ores wrongfully mined and extracted by mortgagor from an adjoining property, especially where such construction of the mortgage would be contrary to that placed upon it by the parties, and where the purpose of such claimed construction is to subject such wrongfully mined ores, or their value, to a trusteeship in the mortgagee for the benefit of the owner of the ores.

2. **Subrogation—Involuntary Trusteeship—Mingling of Funds—Proceeds of Property Converted by Mortgagor—Proceeds Applied in Payment of Superior Lien Claims, Necessity of Showing.**

In a suit seeking to have plaintiff's judgment decreed a lien superior to a mortgage, on the theory of an involuntary trusteeship in the mortgagee, for plaintiff's benefit, because of alleged conversion by mortgagor or plaintiff's ores as embraced in the mortgage description as after-acquired property, and of alleged mingling of proceeds of such converted property with those of mortgagor's property and of application of the mingled funds to payment of mortgagor's operating expenses, for which disbursements plaintiff claims a statutory lien superior to the mortgage is maintainable, held, that, it not being shown that the alleged trust funds were used in making payments to actual lienholders, plaintiff will not be subrogated to such lienholder's rights, nor to those of persons who might have, but did not, file such liens.

3. **Trusts—Involuntary Trust—Dissipation of Trust Fund, Effect on Declaration of Trust—Mingled Proceeds of Converted Ores**

It appearing that the entire mixed fund, or trust fund, alleged to have been created through conversion of plaintiff's ores by a mortgagor and by mingling such with the mortgagor's other funds, and by application of the mingled funds to payment of mortgagor's operating expenses, etc., had been dissipated by mortgagor, so that no part of the alleged trust fund could be traced, held, that no trust can be declared in connection with such mortgage, in favor of plaintiff.

4. **Trusts—Mining Funds—Converted Ores—Following Proceeds—Application of Mingled Funds to Permanent Improvements, Necessity of Showing—Presumption, Finding Destroying it.**

In order that plaintiff may follow, and have subjected to an involuntary trust in his favor, funds of a mining company, mortgagor, for wrongful conversion by mortgagor of plaintiff's ores, the proceeds of which were mingled with mortgagor's funds, and which mingled funds were used, partly in mining and milling expenses, and partly in permanent improvements, **held,** it will be presumed that the part of the fund belonging to the cestui que trust was invested in such improvements, provided it is shown that the trust fund was invested in some particular permanent improvement; but **held,** further, that this presumption was destroyed by a finding that the entire fund actually expended for such improvements was raised from other sources, and that no part of the proceeds of such ores was expended upon the improvements.

5. **Mines and Minerals—Ores, Conversion of—Application of Proceeds—Trusteeship—Finding, Basis of—Sufficiency of Evidence.**

A finding, in a suit to establish and enforce a lien upon the property of a mining company, mortgagor, superior to the mortgage, for the value of plaintiff's ores alleged to have been wrongfully converted by mortgagor, the proceeds of which ores were alleged to have been mingled with mortgagor's funds and applied to improvement of mortgagor's mining property, **held,** to be supported by the preponderance of evidence; nor were the exhibits referred to by appellant the sole basis of the finding.

6. **Trust—Following Trust Funds—Converted Ores—Trust Fund as Part of Mortgaged Property—Augmenting General Estate, Effect.**

Where a finding showed that proceeds of plaintiff's ores converted by a mortgagor negatived the claim that the alleged mingled trust fund was retained in or became part of mortgagor's property, **held,** that plaintiff's claim to a lien thereon superior to the mortgage cannot be sustained on ground that such proceeds have indirectly augmented the general mass of the estate.

7. **Appeal—Error—Mortgagee of Converter of Property, as Joint Tort-feasor—Trespass—Review—Irrelevancy, Under Pleadings.**

Where, in a suit to enforce plaintiff's judgment as a lien upon a mining company's property superior to a mortgage, for value of ores wrongfully mined and extracted from his mine, under the contention that a mortgagee who persists in retaining fruits of a trespass with knowledge thereof becomes a tortfeasor, and jointly liable with mortgagor as a trespasser, no such issue is presented by the pleadings, nor at the trial, it cannot be urged on appeal as ground for reversal.

8. **Evidence—Mining Stock, Issued as Bonus to Mortgage Bond Purchasers—Such Purchasers as Mine Owners—Pertinency.**

In a suit to enforce plaintiff's judgment as a lien upon mortgagor's mining property superior to a mortgage, for value of ores converted by mortgagor, on the theory that a mortgagee persisting in retaining fruits of trespass with knowledge, etc., becomes a joint tort-feasor with mortgagor, evidence that mortgagor's stock was issued to holders of bonds secured by the mortgage as a bonus, and that they in effect became owners of the mortgaged property, **held,** properly excluded as impertinent.

Appeal from Circuit Court, Lawrence County. Hon. WILLIAM G. RICE, Judge.

Action by the Clinton Mining & Mineral Company against the Trust Company of North American and others, to have plaintiff's judgment decreed a superior lien upon mortgaged property of the Trust Company. From a judgment for defendants, and from an order denying a new trial, Plaintiff appeals. Affirmed.

*Eben W. Martin,* and *Norman T. Mason,* for Appellant.

*Stewart & Hodgson,* for Respondents.

[1] Under point one of the opinion, Appellant cited: Rev. Civ. Code, Sec. 1616; Farmer's State Bank v. Kimball Co., 1 S. D. 388; Widman v. Kellogg, (N. D.) 133 N. W. 1020; 3 Pom. Eq. Jur., Secs. 1051, 1053; 2 Story Eq. Jur., Sec. 1258; Widman v. Kellogg, (N. D.) 133 N. W. 1023; Yellowstone Co. v. Bank, 128 Pac. 596; Bank v. Ins. Co., 104 U. S. 54; Hutchinson v. LeRoy, 113 Fed. Rep. 209 (C. C. A. 1st); Frelingson v. Megant, 36 Fed. 229; Terre Haute Co. v. I. R. Co., 102 Fed. 836 (C. C. A. 7th); Smith v. Twp. of Au Gres, 150 Fed. 257 (C. C. A. 6th); 39 Cyc. 539; Plano Co. v. Auld, 14 S. D. 512.

Respondent, The Trust Company of North America, cited: Meyer v. Johnson, 53 Ala. 237, 331; Pennock v. Coe, 23 How. 117, 16 L. Ed. p. 436; Wilson v. N. J. Southern R. Co., 28 N. J. Eq. 277, 298; Haven v. Emery, 33 N. H. 66; Stephens v. Board of Education, 79 N. Y. 183; Ferris v. Van Vechten, 73 N. Y. 113; Phillips v. Overfield, (Mo.) 13 S. W. 705-6.

(2) Under point two of the opinion, Appellant cited: Rev. Civ. Code, Secs. 1625, 1629; Widman v. Kellogg, (N. D.) 133 N. W. 1023; Yellowstone Co. v. Bank, 128 Pac. 596; Bank v. Ins. Co., 104 U. S. 54; Hutchinson v. LeRoy, 113 Fed. 209,

(C. C. A. 1st) ; 39 Cyc. 539; Plano Co. v. Auld, 14 S. D. 512;
Catlett v. Stokes, (S. D.) 145 N. W. 554 (Feb. 1914); Rua v.
Watson, 13 S. D. 456; Farmers' Bank v. Milling Co., 1 S. D.
388; Holly v. Miss. Soc., 92 Fed. 745 (C. C. A. 2d); Chaves v.
Myer, (N. M.) 85 Pac. 233; 3 Pom. Eq. Jur. Sec. 1051; 39 Cyc.
p. 526, 529; 19 Cyc. p. 526, 7.548; Terre Haute Co. v. I. R. Co.,
102 Fed. 835, (C. C. A. 7th); 1 Jones Mtges. Sec. 158; 27 Cyc.
p. 1141, 1168, 1172; Farmers and Traders Bank v. Kimball Mill-
ing Co., 1 S. D. 388; Rev. Civ. Code, Sec. 1616.

Respondent, The Trust Company of North America, cited:
State v. Foster, 5 Wyo. 199, 38 Pac. 926; Burnham v. Bart,
(Wis.) 62 N. W. 96; Gianella v. Momsen, (Wis.) 63 N. W.
1018; Beard v. Independent Dist., 31 C. C. A. 562, 88 Fed. 375;
Slater v. Oriental Mills, 27 Atl. 443.

(3) Under point three of the opinion, Respondent, The
Trust Company of North America, cited: Slater v. Oriental
Mills, (R. I.) 27 Atl. 443; Little v. Chadwick, 151 Mass. 109;
Cavin v. Gleason, 105 N. Y. 256; Ober v. Cochran, (Ga.) 45 S.
E. 382; Shields v. Thomas, (Miss.) 14 So. 85; Nonotuck Silk
Co. v. Flanders, (Wis.) 58 N. W. 384; Association v. Austin,
(Ala.) 13 So. 908; Philadelphia Nat. Bank v. Dowd, 38 Fed.
172; Union Bank v. Goetz, 138 Ill. 127, 27 N. E. 907; Cushman
v. Goodwin, 95 Me. 353, 50 Atl. 50; Ellicott v. Kuhl, 60 N. J.
Eq. 333, 46 Atl. 945; Tucker v. N. H. Tr. Co., 69 N. H. 187, 44
Atl. 927; Ferchen v. Arndt, 26 Ore. 121, 37 Pac. 161; Texas
Moline Plow Co. v. Kingman, (Tex.) 80 S. W. 1042; Thompson's
Appeal, 22 Penn. St. R. 17; Lathrop v. Bampton, 31 Cal. 17;
Metropolitan Bank v. Campbell Commission Co., 77 Fed. 705;
Randolph v. Allen, 19 C. C. A. 369, 370; Twohy Co. v. Melbye,
(Minn.) 81 N. W. 20; Spokane County v. First National Bank,
16 C. C. A. 81, 68 Fed. 979, 981, 982.

(4) Under point four of the opinion, Appellant cited: Plano
Mfg. Co. v. Auld, 14 S. D. 518; Widman v. Kellogg, (N. D.)
133 N. W. 1010; Lincoln v. Morrison, 64 Neb. 822, 90 N. W.
905; Board of Commissioners v. Patterson, 149 Fed. 231; Smith
v. Twp. of Au Gres, 150 Fed. 257, 261; Brennan v. Tillinghast,
201 Fed. 609, 614 (C. C. A. 6th); In re Oatway, L. R. 2 Ch.
356, 359.

Respondent, The Trust Company of North America, cited: Morgan's L. & T., R. & S. Co. v. Tex. Central R. Co., 34 L. Ed. 633, 634, 137 U. S. 172.

(6) Under point six of the opinion, Appellant cited: Re Larkin and Metcalf, 202 Fed. 572-7 (Dist. Ct. S. D.); Terre Haute Co. v. Cox, 102 Fed. 825 (C. C. A. 7th); Spokane Co. v. First National Bank, 68 Fed. 979 (C. C. A. 9th); Peak v. Elliott, 30 Kans. 156, 1 Pac. 499; Harrison v. Smith, 83 Mo. 216; Independent Dist. v. King, 80 Iowa, 497, 45 N. W. 908; Plow Co. v. Lamp, 80 Iowa, 722, 45 N. W. 1049; Lincoln v. Morrison, 64 Neb. 822, 90 N. W. 905; Frelinghuysen v. Nugent, 36 Fed. 229; Peters v. Bain, 133 U. S. 670, 10 Supt. Ct. 361; Farmers Bank v. Milling Co., 1 S. D. 388; Kimmel v. Dickson, 5 S. D. 223; Richardson v. New O. Co., 102 Fed. 782 (C. C. A. 5th); Bettindorf Co. v. Mast Co., 187 Fed. 590 (C. C. A. 6th).

SMITH, J.   The Clinton Mining & Milling Company, a corporation, and the Imperial Gold Mining Company, a corporation, owned adjacent mining properties in Lawrence county. On the 14th day of September, 1911, the Clinton Mining & Mineral Company recovered a judgment in the United States Circuit Court against the Imperial Mining & Milling Company for $14,105.20. This judgment was for the value of ores wrongfully mined and extracted by the defendant from the property of plaintiff in that action. On the 26th day of April, 1911, the Imperial Gold Mining & Milling Company executed and delivered to the Trust Company of North America a mortgage covering and embracing:

"All of the real property of the Imperial Gold Mining & Milling Company, situated in Lawrence county [specially described]; also all lodes, mineral mining property, flumes, ditches, water rights, mill sites, and other mining property that may hereafter be acquired by the said Imperial Gold Mining & Milling Company, by location, purchase, or any other manner whatsoever."

The plaintiff, Clinton Mining & Mineral Company, prays that its judgment in the federal court be decreed a lien superior to the mortgage of the Trust Company of North America, and that the property of the Imperial Gold Mining & Milling Company be decreed to be sold to satisfy plaintiff's judgment. Findings, conclusions, and judgment were for the defendants. Plain-

tiff appeals.   The Trust Company of North America alone appears as respondent in this court.

[1] Appellant contends, first, that the ores wrongfully taken from plaintiff's mining property became subject to the mortgage lien of the Trust Company of North America, by virtue of the clause in the mortgage describing the mortgaged property as:

"All lodes, mineral mining property,   *   *   *   that may hereafter be acquired  *  *  *  by location, purchase, or in any other manner whatsoever."

The trial court, as a conclusion of law, found that the ores wrongfully mined and extracted by the Imperial Gold Mining & Milling Company, or the proceeds thereof, never became any part of the property or *corpus* of the property embraced within the terms and provisions of the mortgage.   Appellant assigns this conclusion as error.   Each of the bonds contained a recital of authority to execute a mortgage "on all its property, both real and personal, and on all property that the said company may hereafter acquire, either by purchase, location, or otherwise," and that the bond "is secured by mortgage upon its real estate *  *  *  and on all other property now owned or that may hereafter be acquired."   Appellant contends that these recitals must be considered in construing the description of the mortgaged property contained in the mortgage.   But these same recitals end with the words:

"To which mortgage reference is hereby made for *description* of said property," etc.

Such recitals, therefore, cannot be resorted to for the purpose of extending the import of the descriptive words in the mortgage beyond their fair and reasonable meaning, and the intent of the parties themselves.   Appellant's contention assumes that, if the mortgage lien be held to cover personal as well as real property, it must be held to attach to all personal property which comes into possession of the mortgagor by theft or trespass.   It could hardly be contended that the language used in the mortgage discloses an intent on the part of the mortgagor to give, or of the mortgagee to take, a lien on property which might come into the possession of the mortgagor through a wrongful trespass. Certainly the person whose property was wrongfully taken should not be permitted to interpret the contract as manifesting an intent

which never existed in the minds of either mortgagor or mort-gagee; and if it be conceded, as contended by appellant, that a trespasser can obtain legal title to property wrongfully taken, as against the owner, when the latter elects to hold the wrongdoer as trustee, it does not follow as a matter of law that the lien of a mortgage previously given, covering after-acquired property, attaches to property so held in trust by the wrongdoer. In this case, both mortgagor and mortgagee deny and disaffirm such a lien.

We are of opinion the trial court was right in its conclusion that the mortgage lien never attached to the ore wrongfully taken by the Imperial Gold Mining & Milling Company. Appellant's logic in this connection is somewhat unique. It insists that respondent shall assume a mortgage lien upon the converted property against its will, and shall then become a trustee of such lien for the benefit of the owner of the converted property, and this without any previous knowledge of, consent to, or participation in the wrongful act on the part of the holder of the lien. We have not discovered any principle of equity which would permit the owner of converted property thus to become subrogated to or to appropriate the lien of a mortgagee who had no part in the wrongful conversion. But a different question is presented by appellant's contention that the enhanced value of the mortgagee's security, by commingling therewith the converted ores, makes the mortgagee an involuntary trustee of the converted property or its value, for the use and benefit of the owner of the converted property.

[2] Appellant in his brief concedes that in order to recover in this action it is necessary for plaintiff to trace its ores, or the proceeds thereof, into some part of the property mortgaged to the trust company. But it contends that when the proceeds of its ores were mingled with the proceeds of the ores belonging to the Imperial Mining & Milling Company, and with moneys borrowed by it, and all deposited together in one account, the whole deposit became a trust fund; that the whole of the trust fund was expended, first, in payment of the company's mining and milling operations, second, in the sinking of the Dakota shaft, and, third, in the payment of interest on the mortgage indebtedness. Its first contention is founded upon the proposition that this trust

fund was used to extinguish obligations created by the company's mining and milling operations, and in the sinking of the Dakota shaft, and that, because the statute allows a lien for an indebtedness so incurred, which would be given preference over the mortgage, plaintiff's right would be given a preference over the rights of the trust company under its mortgage. A sufficient answer to this proposition is that plaintiff has not shown that the trust funds were used in the payment of actual lienholders, and cannot therefore be subrogated to their rights, nor can it be subrogated to the rights of persons who might have been privileged to file such liens, but have ever done so.

[3] The trial court found that the ores were taken and converted by the Imperial Mining & Milling Company during the months of September and October, 1908. It also found that the total receipts of the Imperial Gold Mining & Milling Company, during the year 1908, from ores mined and milled by said company, including the proceeds from ores wrongfully mined from the property of the plaintiff, amounted to the sum of $124,-752.28, and that the total disbursement of the company during that year, in carrying on its entire mining and milling operations, was the sum of $140,002.26, resulting in a loss of $15,249.37. It is thus conclusively shown that the entire mixed fund, or trust fund, was expended during the year 1908. The rule is well settled that when an entire trust fund has been expended, and no portion of it can be traced, no trust can be declared in any case. Appellant's counsel, therefore, are correct when they say in their brief:

"It is, of course, necessary for plaintiff to trace its ores into some part of the property mortgaged to the trust company, before a lien can be declared against that property, in favor of the plaintiff."

[4] They, of course, concede that; if the trust fund is entirely dissipated, no trust can be declared. But they say, where the mixed fund has been expended, partly in general mining and milling expenses, and partly in permanent improvements on property remaining in the hands of the trustee, it will be presumed that the company expended its own part of the trust fund in its mining and milling operations, and that the part of the fund belonging to the *cestui que* trust will be presumed to have been

invested in such permanent improvements, and this remains in the hands of the trustee. This general principle is sustained by the cases cited. In re Oatway, L. R. 2 Ch. 356-359; Board of Com'rs v. Patterson, (C. C.) 149 Fed. 232; Brennan v. Tillinghast, 201 Fed. 609-614, 120 C. C. A. 37; Plano Mfg. Co. v. Auld, 14 S. D. 518, 86 N. W. 21, 86 Am. St. Rep. 769; Lincoln v. Morrison, 64 Neb. 822, 90 N. W. 905, 57 L. R. A. 885. In the latter case the court says:

"So long as the trust property in any shape or form can be recognized, it belongs to the *cestui que trust*. So long as it enters into any fund, property, or mass of assets in any way, the *cestui que trust* has a charge or lien which he may enforce upon the whole. * * * When it is once proved that trust money has gone into the general estate of the trust, * * * we ought to presume, in the absence of other evidence, that it remains therein, * * * and that we ought not to say it cannot be traced, or has wholly disappeared, where the contrary may be fairly inferred."

Appellant, however, concedes that if it had merely shown that the mixed trust fund was used in the trustee's business generally, or in the payment of its debts, it could not have invoked the presumption on which it relies, but that, in order to obtain the benefit of this presumption, it was necessary for appellant to go further, and to show that the trust fund was invested in some particular permanent improvement of the trustee's property. The particular permanent improvement upon which appellant relies in this case is the sinking of the Dakota shaft upon property which the trustee retains. But the presumption relied upon by appellant is entirely destroyed by the direct and explicit finding of the trial court that the entire fund expended in sinking the Dakota shaft, during the years 1908-1910, was raised by assessments upon stockholders of the Imperial Mining & Milling Company, and by advances and loans from different members of the company, and that no part of the proceeds of the ores was used or expended in the development or sinking of that shaft.

[5] Appellant assigns insufficiency of the evidence to sustain this finding of the trial court, "in the particulars set forth in the tenth specification of error," which is as follows:

"The * * * seventeenth and eighteenth findings are un-

supported by the evidence, which shows that large sums were
repaid by the Imperial Company upon the amounts borrowed by
it, no account of which is taken in said findings"—referring us
merely to defendants' Exhibits 2 and 3.

Appellant does not claim that the finding of the trial court
was based wholly upon these exhibits. An examination of them,
however, fails to convince us that the finding is against the pre-
ponderance of the evidence. Appellant's counsel say:

"Confusion does not destroy the equity entirely, but converts
it into a charge upon the entire mass, giving to the party injured
by the unlawful diversion a priority of right over the other credi-
tors of the possessor."

By way of application of this principle they further say:

"It is impossible to say what portion of this mass was made
up of, or included, plaintiff's ores; but as the entire mass con-
stitutes but a single parcel, that fact is immaterial."

But they add:

"We have then a case, not where the proceeds of the trust
property was shown to have been expended in the payments of
debts or operating expenses, but where the presumption is that it
has not been so expended, but has been retained by the wrong-
doer, in the form of a permanent investment in the mortgaged
property. In other words, plaintiff's ores have, with the aid of
the legal presumption adopted by this court, been traced into the
mass of the mortgagor's property, which the mortgagor still re-
tains, and on which the trust company holds its mortgage."

[6] It is sufficient to observe that the finding of the trial
court above referred to absolutely negatives the claim that the
trust fund is retained in, or ever became a part of, the mortgaged
property. Nor can the plaintiff's claim be sustained on the
ground that the proceeds of the trust have indirectly augmented
the general mass of the estate. A few cases may be found which
sustain this view, but it is contrary to the overwhelming weight
of authority.

In Slater et al. v. Oriental Mills, 18 R. I. 352, 27 Atl. 443,
the court says:

"The rule is clear that one has an equitable right to follow
and reclaim his property, which has been wrongfully appropriated
by another, so long as he can find the property, or its substantial

equivalent, if its form has been changed, upon the ground that such property, in whatever form, is impressed with a trust in favor of the owner. * * * But right here comes the argument that it is equitably his own, because the debtor has taken the claimant's money and mingled it with his estate, whereby it is swelled just so much. But, as applicable to all cases, the argument is not sound. Where the property or its substantial equivalent remains, we concede its force; but, where it is dissipated and gone, the appropriation of some other property in its stead simply takes from creditors that which clearly belongs to them. * * * The creditors have done no wrongful act, and should not be called upon, in any way, to atone for the misconduct of their debtor. * * * In examining the question upon authority, we think it is equally clear there can be no equitable relief, except in cases where the fund claimed is in some way apparent in the debtor's estate. * * * The fact that the *cestui que trust* has not entered into the relation of debtor and creditor with the trustee does not affect the question. So long as he seeks to recover what he can show to be his own, he is in the position of an owner; but when he cannot do this, and seeks to recover payment out of the trustee's general estate, he is in the position of a creditor."

The same rule is laid down in Nonotuck Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383, overruling prior Wisconsin cases. The rule is sustained by the following cases, and many others: Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570; Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Ober v. Cochran, 118 Ga. 396, 45 S .E. 382, 98 Am. St. Rep. 118; Shields v. Thomas, 71 Miss. 260, 14 South. 85, 42 Am. St. Rep. 458; Association v. Austin, 100 Ala. 313, 13 South. 908; Philadelphia National Bank v. Dowd (C. C.) 38 Fed. 172, 2 L. R. A. 480; Union Bank v. Goetz, 138 Ill. 127, 27 N. E. 907, 32 Am. St. Rep. 119; Cushman v. Goodwin, 95 Me. 353, 50 Atl. 50; Ellicott v. Kuhl, 60 N. J. Eq. 333, 46 Atl. 945; Tucker v. N. H. T. Co., 69 N. H. 187, 44 Atl. 927; Ferchen v. Arndt, 26 Or. 121, 37 Pac. 161, 29 L. R. A. 664, 46 Am. St. Rep. 603; Texas Moline Plow Co. v. Kingman, 32 Tex. Civ. App. 343, 80 S. W. 1042; Thompson's Appeal, 22 Pa. 17; Lathrop v. Bampton, 31 Cal. 17, 89 Am. Dec. 141; Brewing Ass'n v. Clayton, 56 Fed. 759, 6 C.

C. A. 108; Nat. Bk. v. Campbell Commission Co. (C. C.) 77 Fed. 705; Multnomah Co. v. Oregon Nat. Bank (C. C.) 61 Fed. 912; Massey v. Fisher (C. C.) 62 Fed. 958; Randolph v. Allen, 73 Fed. 23, 19 C. C. A. 369; Holmes v. Gilman, 138 N. Y. 376, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463; Robinson v. Woodward (Ky.) 48 S. W. 1082; Twohy Co. v. Melbye, 78 Minn. 257, 81 N. W. 20; Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6.

[7, 8] Again, appellant contends that a mortgagee who persists in retaining the fruits of a trespass upon the mortgaged property, with knowledge of the trespass, becomes a joint tortfeasor, and should be liable jointly with the mortgagor as a trespasser. It is sufficient to say that no such issue is presented by the pleadings, nor does any such theory appear to have been presented to the trial court. It cannot, therefore, be urged as a ground of reversal in this court. Appellant also assigns errors in the exclusion of evidence.

[9] Appellant sought to prove that the Imperial Company's stock was issued as a bonus to those who bought its mortgage bonds, and that they in effect became the owners of the property mortgaged. This evidence was objected to as not pertinent to any issue under the pleadings, and was properly excluded.

The judgment and order of the trial court must be affirmed.

POLLEY, J., took no part in this decision.