# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2012

_____

|  |  |  |
|---|---|---|
| In re: Graphics Technologies, Inc. | * | |
| | * | |
| Debtor, | * | |
| | * | |
| _____ | * | |
| | * | |
| James E. Ramette, Trustee, | * | Appeal from the United States |
| | * | Bankruptcy Appellate Panel. |
| Appellee, | * | |
| | * | [UNPUBLISHED] |
| v. | * | |
| | * | |
| Digital River, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2004
Filed: November 23, 2004

_____

Before WOLLMAN, HEANEY, and FAGG, Circuit Judges.

_____

PER CURIAM.

Paymentech Co., a credit card processing company, agreed to hold three to five percent of each credit card sale of Tech Squared in reserve for six months to cover chargebacks. After six months, Paymentech would transfer the funds to Tech Squared. Digital River, a provider of web-hosting services and a sister company to Tech Squared, was informally added to the merchant account with Paymentech.

Digital River and Tech Squared arranged to have all their credit card sales processed through Tech Squared, and Tech Squared would apportion disbursements to Digital River based on its sales. Digital River was not a party to the credit card processing agreement with Paymentech.

In late 1999, Graphics acquired all the assets of Tech Squared and assumed Tech Squared's credit card processing agreement with Paymentech. Digital River then entered into a separate agreement with Paymentech in January 2000. In the preceding six months, several hundred thousand dollars was held by Paymentech for Digital River's credit card sales. Under the earlier agreement, the money was disbursed to Graphics's bank account, which its secured lender swept daily to apply to Graphics's loan balance. Digital River later entered into a repayment agreement and Graphics began making payments to Digital River. After Graphics filed for bankruptcy, the bankruptcy trustee brought an adversary proceedings against Digital River to recover the payments made within ninety days before Graphics filed for bankruptcy as avoidable preferential transfers under 11 U.S.C. § 547.

The bankruptcy court granted summary judgment for the trustee, finding the payments were preferential transfers and Digital River was liable to the trustee for $97,514.44. The Bankruptcy Appellate Panel (BAP) affirmed, concluding the funds paid to Digital River in the ninety days preceding Graphic's bankruptcy belonged to Graphics, even though Graphics never had legal title to the funds. In re Graphics Technology, Inc., 306 B.R. 630, 635 (8th Cir. BAP 2004). Because the last credit card transaction that Digital River processed through Tech Squared's agreement occurred no later than the end of January 2000, the last disbursement including Digital River's funds occurred no later than August 2000. Id. at 636. Because Graphics's bank swept its account daily, Graphics had spent all of Digital River's money by the beginning of the preference period in September 2000, and none of the funds were related to Digital River's credit card transactions. Id. Thus, all the money held in the reserve account during the preference period belonged to Graphics. Id. The BAP

also concluded there was no basis to impose a constructive trust in Digital River's favor because Graphics never held legal title to the funds and no trust res was clearly identified in Graphics's bankruptcy estate. Id. The BAP noted Graphics had not taken affirmative action to wrongfully acquire Digital River's property. Id. at 637. Instead, Graphics acknowledged it owed Digital River the money and the parties agreed on a method for repayment. The BAP observed Digital River bore some responsibility because it knowingly consented to having its funds distributed to an account over which it had no control, and did not effectively communicate with Graphics about its ownership of the commingled funds in the account from January to June 2000. Id.

On appeal, Digital River argues Graphics converted Digital River's property, the money was never a part of the bankruptcy estate, and Digital River is entitled to a constructive trust. We review the bankruptcy court's findings of fact for clear error and review de novo the legal conclusions of the bankruptcy court and the bankruptcy appellate panel. Blackwell v. Lurie (In re Popkin & Stern), 223 F.3d 764, 765 (8th Cir. 2000). Having carefully reviewed the case, we see no clearly erroneous findings and conclude the BAP properly analyzed the issues and properly applied Minnesota law. We thus affirm on the basis of the BAP's published opinion. See 8th Cir. R. 47B.

_____