In re BMC INDUSTRIES, INC., Vision–Ease Lens, Inc., Debtors.

Frank Kundrat and Gerald Becker, Plaintiffs,

v.

BMC Industries, Inc., Vision–Ease Lens, Inc., and Deutsche Bank Trust Company Americas, Defendants.

Bankruptcy Nos. 04–43515, 04–43516. Adversary No. 05–4046.

United States Bankruptcy Court, D. Minnesota.

Aug. 23, 2005.

Kenneth J. Ottaviano, Chicago, IL, for Debtors.

## MEMORANDUM OPINION AND ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came on for trial on July 29, 2005. Douglas L. Elsass and Ryan E. Strom appeared for the plaintiffs, Ryan Murphy appeared for Defendants BMC Industries, Inc and Vision–Ease Lens, Inc., and Thomas J. Lallier and Megan A. Blazina appeared for Defendant Deutsche Bank Trust Company Americas.

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

## FACTUAL BACKGROUND

Plaintiff Gerald Becker was an employee of Vision–Ease Lens, Inc. for 37 years. On December 5, 2002, after the termination of his employment, Becker commenced an action in Steams County District Court alleging employment claims against Vision–Ease. Vision–Ease, a subsidiary of BMC, removed the case to the United States District Court for the District of Minnesota. Plaintiff Frank Kundrat is an attorney who represented Becker in his employment suit against Vision–Ease. The parties settled the employment lawsuit during a settlement conference on May 4, 2004 and entered into a settlement agreement. Under the terms of the agreement BMC agreed to pay Kundrat $50,000.00 and Becker $75,000.00 for a total of $125,000.00 in exchange for a mutual release of claims.

On June 2, 2004 Federal Insurance Company issued a $100,000.00 check to BMC labeled "PAYMENT FOR Gerald Becker." On June 8, 2004, BMC deposited the insurance check into its "Lockbox Account". On June 9, 2004 Becker and Kundrat executed the settlement agreement.

On June 9, 2004 the funds deposited in BMC's Lockbox Account number 73761 were credited to its "Concentration Account" number 59949599. On June 10, 2004 BMC issued three checks, one to Kundrat for $50,000.00 for attorney's fees and two to Becker for $18,961.94 and $37,500.00 for a total of $56,461.94. The total amount paid to both parties is $106,461.94.[1]

---

1. The difference between the $125,000.00 settlement amount and the $106,461.94 paid is attributed to withholding by BMC. The agreement called for BMC to pay Becker $75,000.00, half of which would be considered wages for tax purposes.

On June 15, 2004 Vision–Ease executed the settlement agreement and sent the settlement checks to Kundrat. On or about June 17, 2004 Kundrat received the checks from BMC, but he was unable to contact Becker to have him pick up his checks until June 23, 2004. On June 22, 2004, the parties filed a stipulation for dismissal of the employment lawsuit with the district court and Kundrat deposited his check at his bank. On June 23, 2004 BMC and Vision–Ease filed their Chapter 11 petitions. On June 24, 2004 Becker deposited his checks. All three settlement checks were returned unpaid to the plaintiffs' respective banks one week later.

The plaintiffs initiated this adversary proceeding on February 17, 2005 seeking a declaratory judgment that the insurance proceeds paid by Federal Insurance to BMC were not property of the estate under 11 U.S.C. § 541 and asking for the imposition of an implied trust for their benefit.

### PROPERTY OF THE ESTATE

■ The plaintiffs argue that the $100,000.00 paid by Federal to BMC never became property of the bankruptcy estate pursuant to 11 U.S.C. § 541. The Supreme Court has interpreted 11 U.S.C. § 541 broadly to include all types of property, both tangible and intangible. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 205 fn. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Under 11 U.S.C. § 541(a)(1), the estate is comprised of all legal and equitable interests of the debtor as of the commencement of the case. *See Debold v. Case (In re Tri–River Trading, LLC),* 329 B.R. 252, 2005 WL 1962552 (8th Cir. BAP 2005).

■ It is state law that governs the extent of the debtor's interest in property. *Ferris, Baker, Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.),* 371 F.3d 397, 401 (8th Cir.2004); *N.S. Garrott and Sons v. Union Planters Nat'l Bank (In re N.S.*

*Garrott and Sons),* 772 F.2d 462, 466 (8th Cir.1985). "Once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." *N.S. Garrott and Sons,* 772 F.2d at 466.

The plaintiffs argue that the debtor is holding the $100,000.00 from Federal in an implied trust for the plaintiffs' benefit. Even if the plaintiffs are correct that the funds were not property of the estate, they are unable to obtain relief because they have not satisfied the elements of either a constructive or a resulting trust.

### IMPLIED TRUST

#### Constructive Trust

■ A constructive trust is an equitable remedy that may be imposed to prevent unjust enrichment. *Id.* at 467. According to Minnesota law, a constructive trust "has no existence in fact as a trust but is only a fiction adopted by equity as an unjust-enrichment, rectifying remedy." *Knox v. Knox,* 222 Minn. 477, 25 N.W.2d 225, 232 (1946); *Bond v. Commissioner of Revenue,* 691 N.W.2d 831, 837 fn. 3 (Minn. 2005). "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution § 160.

■ In Minnesota, courts have recognized three prerequisites for imposing a constructive trust. Firstly, there exists an appropriate reason to override the status of legal title and ownership. *Shields v. Duggan (In re Dartco),* 197 B.R. 860, 867 (Bankr.D.Minn.1996). This may include the need to prevent unjust enrichment. *Thompson v. Nesheim,* 280 Minn. 407, 159 N.W.2d 910, 917 (1968); *Bond,* 691 N.W.2d at 837 fn. 3. Secondly, the party has locat-

ed an identifiable res or the traceable proceeds from it. *Thompson,* 159 N.W.2d at 916, n. 1; Restatement (First) of Restitution § 215(1) (stating that where a person wrongfully disposes of the property of another, but the property cannot be traced into any product, the other has merely a personal claim against the wrongdoer and cannot enforce a constructive trust or lien upon any part of the wrongdoer's property). Thirdly, possession of the res or its traceable proceeds by the wrongdoer. *Rock v. Hennepin Broadcasting Assoc., Inc.,* 359 N.W.2d 735, 739 (Minn.Ct.App. 1984).

■ To show unjust enrichment, a claimant must prove that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that party to retain the benefit of the enrichment. *Schumacher v. Schumacher,* 627 N.W.2d 725, 729 (Minn.Ct. App.2001). A constructive trust is not created by the court, but rather it is declared by the court to have occurred at the time of the unjust enrichment. *Shearer v. Barnes,* 118 Minn. 179, 136 N.W. 861, 864 (1912); *Knox,* 25 N.W.2d at 232.

■ The claimant must trace the proceeds from the time of the unjust enrichment to the point in which relief is sought. *See* Restatement (First) of Restitution § 215(1)cmt. a. (stating that the claimant must prove not only that the wrongdoer once had the property legally or equitably belonging to him, but that he *still* holds the property or property which is in whole or in part its product.) (Emphasis added). Courts in Minnesota have agreed with the Restatement that the claimant must prove that there is existing property onto which the constructive trust must attach. *Rock,* 359 N.W.2d at 739; *See Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.),* 306 B.R. 630, 635 (8th Cir. BAP 2004) (stating that to reclaim money or property from a bankruptcy estate on the basis that the property belongs to the reclaiming party and not the debtor, the reclaiming party must be able to definitively trace its property).

Kundrat and Becker claim that the debtor was unjustly enriched when it received the $100,000.00 check from Federal and did not pay it to them. For relief, Kundrat and Becker argue that the bankruptcy court should recognize and impose a constructive trust on those assets. Without deciding whether the debtor was unjustly enriched, the plaintiffs' argument fails because they have provided no evidence of the existence of traceable funds on which a constructive trust may be imposed.

■ When cash is the property upon which a party wants the court to impose a constructive trust, it is not necessary for the party to trace the identical funds. It is sufficient to show that the balance in the account into which the funds were deposited has not fallen below the amount claimed to be held in trust. *Ferris, Baker Watts, Inc.,* 371 F.3d at 402; *Ramette,* 306 B.R. at 635; *Bishop v. Mahoney,* 70 Minn. 238, 73 N.W. 6 (1897).

BMC deposited the Federal check in the Lockbox Account number 73761 on June 8, 2004 and from there BMC transferred the funds to the Concentration Account number 5949599 on June 9, 2004. BMC wrote three checks to the plaintiffs from the Disbursement Account number 658555115 on June 10, 2004. The checks to both Kundrat and Becker were dishonored.

At trial the plaintiffs presented bank statements for the Concentration and Disbursement accounts for the period May 29 through June 30, 2004 but provided no further evidence to indicate the current status of any of the bank accounts. These Chapter 11 cases are fourteen months old. There is no evidence of the continuing existence of the accounts, how much is

currently in them or what balances may have existed between June 2004 and trial. Without an identifiable res or the traceable proceeds from it, it is not possible to recognize or impose a constructive trust.

**Resulting Trust**

In the alternative, the plaintiffs argue that the court should recognize that a resulting trust arose when Federal paid $100,000.00 to BMC with a check labeled "PAYMENT FOR Gerald Becker." A resulting trust arises when one party makes a disposition of property under circumstances which raises a presumption that the party making the disposition does not intend the other party holding the interest in the property have the remaining beneficial interest in it. Restatement (Third) of Trusts § 7 cmt. a. In Minnesota, if the intention of the payor is that the receiving party shall keep the money in a separate fund for the benefit of the payor or a third party, a trust is created. *American Surety Co. of New York v. Greenwald*, 223 Minn. 37, 25 N.W.2d 681, 685 (1946). The key inquiry is into the intent, or implied intent of the parties on whether a trust or a debt is created.

Again, the plaintiffs' claim fails because they have provided no evidence that the debtor retains the $100,000.00 or its traceable proceeds. *See* Restatement (Second) of Trusts § 12 cmt. f. (stating that although a trustee becomes insolvent or bankrupt, the beneficiary retains his interest in the subject matter of the trust if it can be identified, or in its product if it can be traced into a product).

### ORDER

THEREFORE, IT IS ORDERED that:

1. The plaintiffs are not entitled to the imposition of a constructive or a resulting trust.

2. The plaintiffs shall recover nothing from the defendants on their complaint.

LET JUDGMENT BE ENTERED ACCORDINGLY.