**In re BMC INDUSTRIES INC., Vision–Ease Lens, Inc., Buckbee–Mears Medical Technologies, LLC, Debtors.**

**Frank Kundrat and Gerald Becker, Plaintiffs,**

**v.**

**BMC Industries, Inc., Vision–Ease Lens, Inc., and Deutsche Bank Trust Company Americas, Defendants.**

**Bankruptcy Nos. 04–43515, 04–43516, 04–43517. Adversary No. 05–404.**

United States Bankruptcy Court, D. Minnesota.

Jan. 22, 2007.

Matthew J. Botica, Winston & Strawn LLP, Jeffrey A. Chadwick, Jeffrey L. Elegant, Kenneth J. Ottaviano, Katten Muchin Zavis, Chicago, IL, Clinton E. Cutler, Ryan Murphy, Fredrikson & Byron, P.A., Minneapolis, MN, Jeff J. Friedman, Merritt A. Pardini, Katten Muchin Rosenman LLP, New York City, Henry C. Kevane, San Francisco, CA, for Debtors.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came for hearing on November 30, 2006 pursuant to the district court's order reversing the judgment entered on August 23, 2005 and remanding for further proceedings. James Rubenstein and Doug Elsass appeared for the plaintiffs. Kenneth Corey–Edstrom appeared for The BMC Liquidating Trust, and Shannon Kelly appeared for defendant Deutsche Bank Trust Company. There were no appearances for defendants BMC Industries, Inc. and Vision–Ease Lens, Inc. The court has jurisdiction over this proceeding under 28 U.S.C. § 157(b)(1) and 1334 and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (K), (O).

## FACTS

Plaintiff Gerald Becker was an employee of Vision–Ease Lens, Inc., a subsidiary of BMC Industries, Inc. On December 5, 2002, he commenced an employment discrimination suit against Vision–Ease and retained Frank Kundrat to represent him. The parties settled the lawsuit on April 4, 2004 and Vision–Ease agreed to pay

$125,000 in exchange for a release of Becker's claims. The settlement was made up of three separate payments: 1) Becker in the amount of $37,500 from which BMC was to deduct withholding taxes, 2) Becker in the amount of $37,500 and, 3) Kundrat in the amount of $50,000.

On June 2, 2004, Vision–Ease's insurance carrier issued a check to BMC for $100,000 which was identified as "Payment for Gerald Becker." BMC deposited the insurance check into BMC Account No. 0791877, the "lockbox account," on June 8, 2004. On June 9, 2004, Becker and Kundrat executed the settlement agreement, and the funds from the insurance check were transferred to BMC Account No. 59–49599, the "concentration account." The next day BMC issued three settlement checks for $50,000 to Kundrat and $18,961.94 and $37,500 to Becker. On June 15, 2004 Vision–Ease executed the settlement agreement and BMC sent the settlement checks to Kundrat. The parties' stipulation for dismissal in the employment lawsuit was filed with the court a week later on June 22, 2004. On June 23, 2004, BMC and Vision–Ease filed Chapter 11 petitions. At that time, none of the checks from BMC to the plaintiffs had been honored. The checks were presented to the debtors' bank after the case was filed but were dishonored.

The debtors made a motion to use cash collateral and obtain secured financing on June 23, 2004. The plaintiffs did not object to the motion. On July 20, 2004, I entered an order 1) authorizing the debtors to obtain postpetition financing and use cash collateral, 2) granting liens and superpriority administrative expense status to secure postpetition financing obligations, and 3) granting adequate protection to the prepetition lenders, which include Bank One NA, Wells Fargo Bank National Association, Harris Trust and Savings Bank, Credit Agricole Indosuez,

Wachovia Bank National Association, Union Bank of California, N.A., U.S. Bank National Association, and Deutsche Bank Trust Company Americas. As part of that order, the postpetition lenders received a first security interest in all of the debtors' unencumbered property and a junior security interest on all other pre-petition and post-petition property of the debtors.

Eight months later, on February 17, 2005, Kundrat and Becker initiated this adversary proceeding and sought a declaration that the $100,000 check from the insurance company was not property of the bankruptcy estate. They also sought the imposition of a constructive or resulting trust on those funds. They did not seek any preliminary relief to maintain the status quo. Following a trial, I entered an order on August 23, 2005 which held that the plaintiffs' failure to prove that the money in the concentration account was traceable to the funds from the insurance check meant that the plaintiffs did not meet the burden of proof necessary for the imposition of a constructive or resulting trust. See *Kundrat v. BMC Industries, Inc. (In re BMC Industries, Inc.)*, 328 B.R. 792 (Bankr.D.Minn.2005). The plaintiffs appealed the decision not to impose a constructive trust to the district court. They did not appeal the decision as to the resulting trust. Again the plaintiffs did not seek an order from me or the district court to maintain the status quo pending the appeal.

On February 3, 2006, the debtors filed their Joint Plan of Liquidation and an accompanying disclosure statement. The plaintiffs did not object to the plan or the disclosure statement, but on March 2, 2006, the U.S. Trustee objected to the disclosure statement because, inter alia, it failed to describe the status of the plaintiffs' claims.

Around May 8, 2006 the debtors began to receive funds from various preference

actions which they had initiated. These funds were deposited into the BMC Preference Account. The account was separate from all other accounts held by the debtors.

In response to the objections to their plan, the debtors filed an amended plan on June 21, 2006. They filed the accompanying disclosure statement on June 26, 2006. The debtors' amended plan makes no provision for the payment of the plaintiffs' claims, except to the extent of any allowed unsecured claims. The Second Amended Disclosure Statement states that, "Oral argument with respect to the appeal was heard on March 15, 2006. If Becker and Kundrat are *ultimately successful,* the Debtors will be required to pay Becker and Kundrat a total of $100,000 from their available assets. Any remaining claims of Becker and Kundrat will constitute only general unsecured claims (emphasis added)." However, there is no plan provision for the repayment of those claims if the plaintiffs are successful. The plaintiffs did not object to the amended plan or the amended disclosure statement.

On August 9, 2006, there was a hearing on confirmation of the debtors' amended plan. The plaintiffs did not appear. On August 10, 2006, I confirmed the debtors' Amended Plan of Liquidation. On August 21, 2006, the debtors approved the Liquidating Trust Agreement, which created The BMC Liquidating Trust. The Trust was created in order to distribute funds to the creditors of all three debtors in accordance with the amended plan and the Liquidating Trust Agreement. The debtors then transferred $1,035,256 from the concentration account to Insight Equity on August 22, 2006. The next day, August 23, the debtors transferred $48,409.24 from the concentration account to Insight Equity. After the transfers, the balance in the concentration account was $5,670.93.

On August 29, 2006, the district court entered its order. The district court did not rule for the plaintiffs on the merits but did hold that because the concentration account had been in the exclusive control of the debtors over the relevant period, they had the burden of producing evidence that the concentration account no longer contained the money from the insurance checks. This shifted the burden of production from the plaintiffs to the defendants. The district court reversed and remanded the case for further proceedings not inconsistent with its opinion. The liquidating trust now stipulates that the concentration account balance did not drop below $100,000 prior to trial. However, after August 23, shortly before the district court's decision, the account contained only $5,670.93.

Four days later on September 15, the debtors transferred the money left in the concentration account into to the BMC Liquidating Trust Bank Account. On October 10, 2006, the debtors transferred the money from the preference account, which at that time totaled $134,073.41, into the Trust Account. Pursuant to the debtors' plan, the Liquidating Trust received both the money from the preference account and the concentration account "free and clear of all Liens, Claims, and encumbrances."

On September 11, 2006, the Liquidating Trust objected to the allowance of various claims, including the plaintiffs' claims. Because neither of the plaintiffs responded to the objection, on October 30, 2006, I disallowed the plaintiffs' claims.

## DISCUSSION

*The Decision to Reopen the Record On Remand Rests Within the Judge's Discretion.*

"Reopening the evidentiary record on remand is in the sound discretion of

the trial court and can only be reviewed for abuse of that discretion." *Confederated Tribes of Warm Springs Reservation of Oregon v. U.S.,* 101 Fed.Appx. 818, 822 (Fed.Cir.2004); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331–333, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). On remand, the lower court has the ability to develop the record more fully before deciding the remanded issue. *Bernstein, Litowitz, Berger & Grossman v. City of Seattle (In re Washington Public Power Supply System Securities Litigation),* 19 F.3d 1291, 1302 (9th Cir.1994).

This is not an ordinary case where the facts are static and it might be unfair to give parties a second opportunity to introduce evidence they failed to introduce the first time. This is a dynamic situation involving a *res* where knowing the *current* facts is essential to the decision. The events which occurred between the plaintiff's trial and the appellate decision changed the factual scenario surrounding the case. Therefore, I found it necessary to receive evidence about the current state of the debtors' bank accounts in order to determine whether any assets existed on which to impose a constructive trust.

### The Plaintiffs Did Not Appeal the Decision Not to Impose a Resulting Trust.

The plaintiffs did not appeal my refusal to impose a resulting trust. Therefore, I will not reconsider that part of the original decision.

### The Plaintiffs are No Longer Creditors.

■ "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a).

The Liquidating Trust objected to the allowance of the plaintiffs' claims and the plaintiffs did not respond. As a result, the plaintiffs' claims were disallowed on October 30, 2006. Because the plaintiffs no longer have claims, they are no longer creditors.

### The Concentration Account No Longer Contains A Trust Res.

■ A constructive trust is an equitable remedy that may be imposed to prevent unjust enrichment. According to Minnesota law, a constructive trust "has no existence in fact as a trust but is only a fiction adopted by equity as an unjust-enrichment, rectifying remedy." *Knox v. Knox,* 222 Minn. 477, 25 N.W.2d 225, 232 (1946). "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution § 160.

■ In Minnesota, there are three requirements for the imposition of a constructive trust. First, there exists an appropriate reason to override the status of legal title and ownership. *Shields v. Duggan (In re Dartco),* 197 B.R. 860, 867 (Bankr.D.Minn.1996). Second, the party has located an identifiable res or the traceable proceeds from it. *Id.* Third, possession of the res or its traceable proceeds by the wrongdoer. *Id.*

■ Minnesota law requires that the party seeking the imposition of a constructive trust trace those funds "into an identified product or property currently in [the debtors'] estate." District Court Order p. 5, citing *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing),* 371 F.3d 397, 401 (8th Cir.2004). To trace assets in an account, the lowest intermediate balance test is used. *Id.* at 402. Under this test, the restitution occurs from the account where the amount on deposit has at all times since the commingling of the funds equaled or exceeded the amount of

the trust fund. *Id.* The intermediate balance test relies on the fiction that the trust funds are the last funds which are withdrawn from the account. *Id.* Thus, if the amount is reduced lower than the trust amount, then the claimant is entitled to the lowest intermediate balance of the account. *Id.* If the account is depleted after the trust fund has been deposited, the trust fund is treated as lost. *Id.* The purpose of tracing is to identify a particular entrusted asset, not just to identify some assets. *Id.* Therefore, a constructive trust creates a trust in specific property, not an amorphous amount which may be imposed against any of the debtors' property. *Id.*

Prior to August 23, 2006, the concentration account contained in excess of $100,000 and had never fallen below that amount. However, on August 22 and 23, 2006, the debtors transferred over one-million dollars to Insight Equity which left approximately $5,700 in the concentration account. These remaining funds were transferred to the Liquidating Trust on September 15, 2006. After the funds in the concentration account had been depleted, the constructive trust claim was lost. The plaintiffs argue that they needed only trace the trust funds up to the time of trial. However, the law and the district court order requires the estate to *currently* hold the trust property. As the debtors no longer possess any assets in the concentration account, or any other assets for that matter, a constructive trust cannot be imposed on them. In any event, it is difficult to see the point in imposing a constructive trust on an empty concentration account which presumably has been closed.

■ The plaintiffs argue that I should impose a constructive trust on the preference account to which the debtors made deposits starting on May 8, 2006. First, the plaintiffs are only entitled to a trust on an identifiable res, not all of the debtor's assets. *See Ferris,* 371 F.3d at 401 ("[T]he point of tracing for a common-law or a constructive trust is to follow the *particular* entrusted assets, not simply to identify *some* assets.")(quoting *Conn. Gen. Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612, 620 (1st Cir.1988)). Second, all of the debtors' property has been transferred to the Liquidating Trust.

### The Debtors No Longer Possess Any Assets From Which Plaintiffs Can Collect.

The debtors have rid themselves of all of their assets and while they may continue to exist legally, they are factually defunct. They have not even bothered to continue defending this adversary proceeding.

### Plaintiffs Cannot Recover from The BMC Liquidating Trust.

The plaintiffs' point to the language inserted in the disclosure statement at the request of the United States Trustee. Of course, the disclosure statement is a document created for purposes of soliciting acceptances of the plan. 11 U.S.C. § 1125. It is the *plan* that governs the treatment of the plaintiffs. However, even the language itself is unavailing; it begs the question. "If the plaintiffs prevail on their $100,000 cause of action, they will receive $100,000." However, while the plaintiffs were successful in obtaining reversal of the original judgment in this proceeding, they have not "ultimately prevailed," and now they legally cannot prevail.

■ Alternatively, the plaintiffs seek to recover from the Liquidating Trust. They have two threshold problems. First, their claims have been disallowed. Second, the entity from which they seek to recover, The BMC Liquidating Trust, is not a party to this adversary proceeding.

If the plaintiffs could get past these issues, they face the problem that they are

bound by a plan that makes no provision for the claims they are asserting in this proceeding. *See* 11 U.S.C. § 1141(a). Additionally, the property upon which they sought to impose a constructive trust has been distributed pursuant to the plan (and by statute) free of their asserted claims and interests. *See* 11 U.S.C. § 1141(c).

The plaintiffs also point to the various individual clauses of the plan and the trust to save their case, including an argument that they should be treated as holder of an "Allowed Other Secured Claim," but of course, they have no allowed claim at all, much less an allowed secured claim and this argument only begs the issue. To be secured, a creditor must hold an interest in the estate's interest in property. 11 U.S.C. § 506(a). However, this has never really been their argument and they have not established any such interest, and now cannot because of the extinction of the alleged res.

*Conclusion*

Because the plaintiffs failed to take steps to either ensure the preservation of any trust res or insist on explicit treatment in the plan, their cause of action for the imposition of a constructive trust must fail. I need not address the other requirements for imposition of a constructive trust.

**ORDER**

THEREFORE, IT IS ORDERED that:

1. The plaintiffs are not entitled to the imposition of a constructive or a resulting trust.

2. The plaintiffs shall recover nothing from the defendants on their complaint.

LET JUDGMENT BE ENTERED ACCORDINGLY.